80 A.3d 322

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Michelle DAVY.

Misc Docket AG No. 2, Sept. Term, 2011.

Court of Appeals of Maryland.

Nov. 27, 2013.

676

678

Dolores O. Ridgell, Asst. Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Michelle Davy, Largo, Maryland, for respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD, WATTS, JJ.

WATTS, J.

Foremost among matters, this case concerns a Maryland lawyer who promised to file a complaint on a client's behalf, learned that the court had rejected the complaint for filing, and then repeatedly deceived her client as to the status of the litigation while demanding additional retainer payments.

Michelle Hamilton Davy ("Davy"), Respondent, a member of the Bar of Maryland, represented three clients in two unrelated matters. Linda Smalls ("Smalls") retained Davy to institute an employment discrimination action against her former employer. Bobby McAdams ("McAdams"), a jeweler doing business as "Watch Tune Up, Inc." ("Watch Tune Up"), retained Davy to represent him and his business as both filed for bankruptcy. Both Smalls and McAdams filed complaints against Davy with the Attorney Grievance Commission of Maryland ("the Commission"), Petitioner.

On February 22, 2011, in this Court, the Commission filed a "Petition for Disciplinary or Remedial Action" against Davy, charging her with violating the following Maryland Lawyers' Rules of Professional Conduct ("MLRPC"): 1.1 (Competence), 1.2 (Scope of Representation and Allocation of Authority Between Client and Lawyer), 1.3 (Diligence), 1.4 (Communication), 1.5 (Fees), 1.15 (Safekeeping Property), 1.16 (Declining or Terminating Representation), and 8.4 (Misconduct). On February 28, 2011, this Court referred the case to the Honorable Beverly J. Woodard ("the hearing judge") of the Circuit Court for Prince George's County ("the circuit court"). On May 8 and 9, 2012, the hearing judge conducted a hearing.

On December 21, 2012, the hearing judge filed, in this Court, an opinion including findings of fact and concluding that, in her representation of Smalls, McAdams, and Watch Tune Up, Davy had violated MLRPC 1.1, 1.2(a), 1.3, 1.4, 1.5(a), 1.5(b), 1.15(c), 1.16(d), 8.4(c), and 8.4(d).

■ On September 4, 2013, we heard oral argument. On September 5, 2013, in a per curiam order, we disbarred Davy. *See Attorney Grievance Comm'n v. Davy,* 434 Md. 246, 74 A.3d 727 (2013). We now explain the reasons for Davy's disbarment.[1]

## I. Hearing Judge's Findings of Fact

In a comprehensive forty-five page opinion, the hearing judge found the following facts, which we summarize.

On June 5, 1996, this Court admitted Davy to the Bar of Maryland. On September 8, 2003, with her consent, this Court indefinitely suspended Davy from the Bar of Maryland. *See Attorney Grievance Comm'n v. Hamilton,* 377 Md. 54, 832 A.2d 170 (2003).[2] In *Hamilton, id.,* 377 Md. 54, 832 A.2d 170, this Court permitted Davy to apply for reinstatement after one year, and ordered that, before applying for reinstatement,

---

1. Where a lawyer's misconduct is so egregious that there is an urgent need to protect the public from the lawyer's practice of law, this Court may exercise its discretion to disbar the lawyer immediately after oral argument, and to explain the reasons in a subsequent opinion. *See generally Attorney Grievance Comm'n v. Coppock,* 432 Md. 629, 648, 69 A.3d 1092, 1102 (2013) ("[T]he ... goal of attorney discipline proceedings is to protect the public." (Alteration in original) (citation and internal quotation marks omitted)).

2. The hearing judge inadvertently stated that Davy's suspension occurred in 2002. At the time of her suspension, Davy was also known as "Michelle Hamilton." *See Hamilton,* 377 Md. 54, 832 A.2d 170.

Although the hearing judge did not refer to any case by name, the hearing judge generally referred to the circumstances of *Hamilton, id.,* 832 A.2d 170, *In re Petition for Reinstatement of Hamilton,* 384 Md. 156, 862 A.2d 992 (2004), and *Smalls v. Emanuel,* 840 F.Supp.2d 23 (D.D.C. 2012). We take judicial notice of these cases. *See* Md. R. 5–201(b)(2) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

Davy both "refund all fees paid to her by [seven] individuals" and "obtain a physical/psychological evaluation demonstrating her fitness to practice law[.]" On December 7, 2004, this Court reinstated Davy to the Bar of Maryland. *See In re Petition for Reinstatement of Hamilton,* 384 Md. 156, 862 A.2d 992 (2004).

In May 2008, Davy became a solo practitioner. At the time of her alleged misconduct, Davy's office was in Prince George's County, Maryland.

## A. Davy's Representation of Smalls

From 2002 through 2007, Smalls worked as a civil servant in the Office of the Administration of the Executive Office of the President. In 2007, Smalls's employment with the office ended. As a result, Smalls filed multiple complaints with the Equal Employment Opportunity Commission, which issued Smalls a "right to sue" letter that imposed a deadline of November 6, 2009, for the lawsuit.

On or about October 20, 2009, Smalls contacted Davy through Davy's website. On or about October 23, 2009, Davy telephoned and spoke with Smalls, who sought legal advice about the termination of her employment. Smalls told Davy that a lawsuit would need to be filed no later than November 6, 2009. Davy told Smalls that she would represent her for a charge of $200 per hour, and that she would need a retainer of between $2,500 and $3,000.

On October 26, 2009, Smalls brought a check in the amount of $3,000 to Davy's office. At that time, Davy told Smalls that she wanted an additional $2,000. Smalls gave Davy the check for $3,000 and agreed to allow $2,000 to be charged to her credit card. Although Davy knew that she had not yet earned $5,000, she never deposited any of Smalls's payments into a client trust account. Before the hearing judge, Davy stated that she did not deposit Smalls's payments into a client trust account because, at the time that she began representing Smalls, she had been corresponding with the Commission, pursuant to a conditional diversion agreement, about a prior

complaint concerning the written retainer agreement format that she had been using.[3]

After receiving Smalls's check and credit card information, Davy told Smalls that she wanted a $20,000 retainer. Smalls requested a payment plan. Davy agreed to let Smalls use a payment plan, but did not tell Smalls when she would have to make payments. Davy did not tell Smalls: (1) how she would use the $5,000 in payments; (2) how much she would charge in total for the representation; or (3) anything about a client trust account. Davy and Smalls agreed to meet again on November 4, 2009, by which date Davy promised to have a complaint ready.

On November 4, 2009, Davy and Smalls met. Davy did not have the complaint or the written retainer agreement. During the meeting, Davy said something to the effect of: "Mamma's got to eat, so you're [ ] going to have to pay this kind of money." Smalls became emotional and started to leave the room, but Davy stopped her and promised that the complaint would be ready within a couple of hours.

Two days later, on November 6, 2009, at 2:53 a.m., Davy e-mailed Smalls a copy of the complaint. At 9:25 a.m., Smalls e-mailed Davy, stating that the complaint was acceptable. At 9:11 p.m., Davy left the complaint in the box for after-hours filings at the United States District Court for the District of Columbia ("the federal court").

On November 9, 2009, Davy met with Smalls and gave her a written retainer agreement, under which Davy was entitled to a $5,000 retainer, a $250 "nonrefundable consultation fee," and a $500 "nonrefundable engagement fee." Before then, Davy had not told Smalls about either of the nonrefundable fees. The written retainer agreement did not: (1) state that its terms were retroactive; (2) refer to the $5,000 that Smalls had

---

**3.** Under a conditional diversion agreement between the Commission and a lawyer, the Commission agrees to "stay [ ] any disciplinary or remedial proceeding pending satisfactory performance by the" lawyer. Md. R. 16–736(c)(4). Below, in our discussion of mitigating factors, we address the frivolousness of Davy's contention.

already paid; (3) include details of a payment plan; or (4) state that the retainer would be $20,000. The hearing judge found that, in the written retainer agreement with Smalls, Davy intentionally failed to state that the retainer would be $20,000 because the $20,000 retainer might have discouraged Smalls from hiring Davy. Although the written retainer agreement stated that the retainer would not be deposited into a client trust account, Davy never pointed out the provision or orally informed Smalls about client trust accounts.

On November 9, 2009, Smalls paid Davy another $5,000. Davy gave Smalls a receipt that reflected a $350 filing fee. Smalls asked Davy for the case number, which Davy promised to provide; Davy, however, made no effort to learn the case number.

On November 13, 2009, the federal court mailed Davy the check for the $350 filing fee, along with an explanation that the federal court had rejected the complaint for filing, as Davy had failed to renew her membership in the federal court's bar and to include a civil cover sheet, summons, and disc with the complaint. On November 18, 2009, the United States Postal Service forwarded the mailing to Davy's address at the time, as Davy no longer lived at the address to which the federal court had sent the mailing.

On November 23, 2009, Davy e-mailed Smalls, stating that "we have been working on billing statements[,]" which she would provide "momentarily," and asking when Smalls would replenish her account. Smalls e-mailed Davy, stating that she would make another payment by November 29, 2009, and asking whether a summons had been served in the case. Before the hearing judge, Davy stated that Smalls did not deserve a prompt answer to her question about the summons because Smalls had not made additional payments.

On November 24, 2009, Davy telephoned the federal court and spoke with three people about the rejection of the complaint. As of that day, if not before, Davy knew that the federal court had rejected the complaint for filing and not issued a summons. Nonetheless, on that day, Davy e-mailed

Smalls, stating: "[W]e will check with the process servers and follow up on their progress and give you a report." On November 25, 2009, Davy e-mailed Smalls, stating she had followed up with the process server, but that "we have not yet been able to serve the complaint quite yet because the court still has to issue the summons[.] It normally takes several days for the summons to be issued; I also contacted the court to follow up and we will keep you apprised on the progress." In her e-mail, Davy did not mention that the federal court had rejected the complaint for filing; instead, Davy wrote that "the complaint was filed on time[.]" The hearing judge found that Davy intentionally failed to inform Smalls about the federal court's rejection of the complaint for filing because Davy wanted "to mislead Smalls as to the quality of her representation."

On November 30, 2009, after having been explicitly advised, several days earlier, of the complaint's rejection, Davy e-mailed Smalls, stating that, if Smalls wanted the representation to continue, she would need to provide a check or her credit card information.

On December 1, 2009, Davy e-mailed Smalls, stating that she had filed the complaint and Smalls had yet to pay the $350 filing fee—even though Smalls had paid the $350 filing fee according to the receipt that Davy had given Smalls on November 9, 2009. On December 2, 2009, Davy e-mailed Smalls a request to replenish the retainer and a billing statement, according to which $350 in costs "had been received." Ironically, the billing statement included a charge for Davy's telephone call to the federal court on November 24, 2009—the call during which she had been advised of the complaint's rejection. Davy also charged fees for such administrative acts as preparing billing statements, even though Davy never explained the administrative fees to Smalls, who never consented to the administrative fees.

On December 2 or 3, 2009, Smalls visited the federal court, and was told that there was no case pending in her name. On December 3, 2009, Smalls e-mailed Davy, stating that she did

not believe that Davy had filed the complaint on November 6, 2009, that Davy had breached their contract, and that, if Davy did not refund the $10,000 that she had paid by December 7, 2009, she would take "appropriate action."

On December 4, 2009, Davy e-mailed Smalls, stating that: (1) she had followed up on Smalls's claims and discovered a "technical error"; (2) she would correct the filing problem at no charge; (3) the federal court had "advised [Davy] that [Smalls's] case [would] be perfected as of the date filed"; and (4) she would refund the unearned portion of the retainer as soon as possible.

On the same day, Davy filed in the federal court a "Motion for Appropriate Relief *Nunc Pro Tunc*," in which Davy requested that the federal court "relieve [Smalls] of the impact of the honest technical mistakes of [Davy], and deem the complaint ... filed *nunc pro tunc* as of the original filing date, November 6, 2009." The hearing judge found that Davy filed the motion for financial reasons—*i.e.*, so that Davy could continue to demand payments from Smalls.

On December 15, 2009, Davy e-mailed Smalls, stating: "I still want to do the case if you want me to, so let me know if you are ready to replenish your account and have us proceed, or not." On December 21, 2009, Davy e-mailed Smalls, stating that, if Smalls wanted the lawsuit to continue, she would need to "comply with the retainer agreement or hire another attorney at once." On that day, Smalls e-mailed Davy, stating that she still wanted a refund of the $10,000 that she had paid, and that she intended to file a complaint against Davy. On December 22, 2009, Davy e-mailed Smalls, stating that, because Smalls no longer wanted the representation to continue, she would withdraw her appearance and do nothing further on Smalls's behalf.

On January 6, 2010, Smalls filed a complaint against Davy with the Commission. On or about January 30, 2010, Smalls's credit card company refunded the $2,000 that Smalls had charged to her credit card. On March 18, 2010, the Commission's Bar Counsel's investigator interviewed Davy. On the

same day, Davy moved to withdraw her appearance in Smalls's case, and on March 19, 2010, the federal court granted the motion to withdraw. On August 17, 2010, the federal court granted the "Motion for Appropriate Relief *Nunc Pro Tunc.*" On December 29, 2010, Davy refunded the remaining $8,000 to Smalls. The hearing judge found that, because Davy did not refund $8,000 to Smalls until December 29, 2010—after Smalls had filed a complaint against Davy with the Commission and approximately one year after she had promised to make the refund—Davy had not been honest in her December 4, 2009, promise to give Smalls a refund.

Smalls ended up representing herself in her case. On January 14, 2012, the federal court dismissed Smalls's case because of substantive defects in the complaint drafted by Davy. Specifically, the federal court determined that it lacked subject-matter jurisdiction over all of the claims asserted by Davy on Smalls's behalf. *Smalls v. Emanuel,* 840 F.Supp.2d 23, 26 (D.D.C.2012).[4] Before the hearing judge, Davy stated that it was Smalls's fault that the federal court dismissed Smalls's case. According to Davy, Smalls should have amended the complaint.

### B. Davy's Representation of McAdams and Watch Tune Up

In 2009, McAdams was a jeweler doing business as Watch Tune Up. In the District Court of Maryland, sitting in Prince George's County, Watch Tune Up was sued to recover unpaid rent. Davy met with McAdams to discuss legal matters

---

4. For example, in Counts I and II of the complaint, Davy alleged race discrimination and retaliation on behalf of Smalls pursuant to 42 U.S.C. § 1981(b). *Smalls,* 840 F.Supp.2d at 29. The Supreme Court, however, has established Title VII as the exclusive judicial remedy for claims of discrimination in the context of federal employment. *Id.* Count III was dismissed because the Court of Federal Claims has exclusive jurisdiction over contract claims for damages greater than $10,000, and Davy had demanded greater than $10,000 in damages. *Id.* at 30. Count IV was dismissed because the Civil Service Reform Act precludes claims for breach of implied contract. *Id.* at 32. Count VII was dismissed because "[a] claim of civil conspiracy is not an independent tort under D.C. law[.]" *Id.* at 36.

related to McAdams's and Watch Tune Up's financial difficulties. On February 16, 2009, Davy and McAdams entered into a written "Client Retainer Agreement," under which: (1) Davy would represent McAdams in "filing bankruptcy" (the written retainer agreement did not state whether Davy would handle McAdams's bankruptcy, Watch Tune Up's bankruptcy, or both); (2) Davy would receive $220 per hour; and (3) McAdams would pay Davy $1,500 as a "non-refundable engagement fee[,]" which McAdams paid Davy on or about that day. On March 9, 2009, McAdams paid Davy $3,000.

On May 7, 2009, McAdams asked Davy for a billing statement. On or about May 11, 2009, Davy and McAdams entered into a second "Client Retainer Agreement," under which: (1) Davy would represent McAdams in "business bankruptcy and business dissolution" (the written retainer agreement did not delineate the amount to be charged for either service); (2) Davy would receive $220 per hour; and (3) McAdams would pay Davy $7,000 as a "non-refundable engagement fee." The second written retainer agreement did not refer to the $3,000 that McAdams had already paid. Neither the first nor second written retainer agreement mentioned a client trust account, and Davy never orally informed McAdams about client trust accounts or non-refundable engagement fees. On May 11, 2009, McAdams paid Davy another $3,000,

On June 10, 2009, on behalf of Watch Tune Up, Davy filed a "Voluntary Petition for Bankruptcy Protection under Chapter 7." On June 11, 2009, the bankruptcy court issued a deficiency notice because Davy had not filed certain documents. The bankruptcy court set a deadline of June 25, 2009, to provide the missing documents. On June 25, 2009, Davy filed a "Motion to Enlarge the Time" until July 10, 2009; the bankruptcy court granted the motion. Davy, however, did not provide the missing documents until July 11 and 13, 2009. The documents included a schedule stating that Watch Tune Up owned a condominium. Davy had not researched land records and thus, although she identified Watch Tune Up as the condominium's owner, as she later acknowledged, she was unsure whether McAdams or Watch Tune Up actually owned

the condominium.[5] The schedule listed the condominium's value as $30,000; however, there was no equity in the condominium, and Davy never had the condominium appraised.

On July 13, 2009, the bankruptcy court issued a second deficiency notice because the documents that Davy had filed were unsigned. The bankruptcy court set a deadline of July 25, 2009, to provide the signed documents. On July 28, 2009, Davy filed another "Motion to Enlarge Time." On July 29, 2009, the bankruptcy court issued yet another deficiency notice, which stated that the proposed order submitted with the "Motion to Enlarge Time" was not properly formatted.

On July 29, 2009, for the first time, Davy gave McAdams a billing statement. Davy charged fees for administrative acts such as preparing billing statements, even though she had not explained the administrative fees to McAdams, who never consented to the fees.

On August 27, 2009, Davy corrected Watch Tune Up's bankruptcy filings. On October 8, 2009—while Watch Tune Up's bankruptcy was ongoing—Davy e-mailed McAdams, stating that she was withdrawing from the representation, and that she would refund $2,000 and return the file to McAdams.

On December 15, 2009, McAdams filed a complaint against Davy with the Commission. On March 18, 2010, the Commission's Bar Counsel's investigator interviewed Davy. On the same day, Davy refunded $2,000 and returned the file to McAdams, and notified the bankruptcy court that she no longer represented McAdams. Davy never: (1) provided a final, accurate accounting for the $7,500 that McAdams had paid; (2) completed Watch Tune Up's dissolution or bankruptcy (which closed on September 2, 2010); (3) completed the

---

5. Before the hearing judge, the Commission read into the record the following excerpt from Davy's deposition:

[Watch Tune Up] had a condominium, a business condominium. . . . I'm not 100 percent certain . . . exactly how it was titled. . . . I think it was titled in [ ] McAdams'[s] name. . . . [B]ut [the condominium] was used for his business. . . . So we did declare [the condominium] as an asset of [Watch Tune Up] in the bankruptcy.

filing process for McAdams's new business; or (4) filed for bankruptcy on McAdams's behalf.

## II. Standard of Review

In an attorney discipline proceeding, this Court reviews for clear error the hearing judge's findings of fact, and reviews *de novo* the hearing judge's conclusions of law. *See* Md. R. 16–759(b)(1) ("The Court of Appeals shall review de novo the circuit court judge's conclusions of law."); Md. R. 16–759(b)(2)(B) ("The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."); *see also Attorney Grievance Comm'n v. Fader*, 431 Md. 395, 426–27, 66 A.3d 18, 36–37 (2013).

## III. Discussion

### A. Exceptions

The Commission filed no exceptions to the hearing judge's findings of fact and conclusions of law.

Davy filed a seventy-seven page document in this Court entitled "Exceptions, Recommendations, Renewed Motion to Dismiss and Request for Oral Argument." In the document, Davy incorporated a "Motion to Dismiss," which is a fifty-five page document that she filed in the circuit court[6] in June 2012—*i.e.*, after the hearing in the circuit court, but before the hearing judge issued her opinion.

As a threshold matter, we decline to consider the "Motion to Dismiss." Because Davy filed the "Motion to Dismiss" before the hearing judge issued her opinion, the "Motion to Dismiss" does not address the hearing judge's findings of fact and conclusions of law, and thus is of no help to us in attempting to divine any issue that Davy takes to the hearing judge's

---

6. In filing a "Motion to Dismiss" in the circuit court, Davy did not realize that the hearing judge had no authority to dismiss this case. *See Attorney Grievance Comm'n v. Braskey*, 378 Md. 425, 441, 836 A.2d 605, 615 (2003) (In an attorney discipline proceeding, "the hearing judge ... lacks [the] authority to dismiss the" case. (Citation omitted)).

findings of fact and conclusions of law. Thus, we consider only Davy's exceptions.

Unfortunately, Davy's exceptions are of little help to us in discerning the issues she raises as to the hearing judge's findings of fact and conclusions of law. Davy's exceptions include sixty pages of tables that contain one row taking issue with nearly every sentence of the hearing judge's opinion. Each row contains one or both of two apparently copied-and-pasted paragraphs in which Davy generally denies the accompanying sentence's contents as follows:

| In its Petition for Disciplinary or Remedial Action, Petitioner alleged that Respondent violated Maryland Lawyers' Rule [sic] of Professional Conduct, hereafter "MRPC," [sic] 1.1, 1.2, 1.3, 1.4, 1.5(a) and (b), 1.15(c), 1.16(d), 8.4(c) and (d). | This finding of fact or conclusion of law is [the Commission]'s misleading or untrue statement of evidence not plead and at issue or not proven at trial per the Rules. [Davy] incorporates by reference facts in her 6.29.12 Motion that were proven. | This conclusion of law is [the Commission]'s misstatement or reflects its omission of applicable precedent. [Davy] incorporates by reference herein legal standards in her 6.29.12 Motion which are complete and accurate. |
|---|---|---|

Inexplicably, Davy even generally denies the findings of fact that are seemingly indisputable, such as the finding that in 2009, McAdams was a jeweler doing business as Watch Tune Up. Simply put, Davy fails to explain how the hearing judge's findings of fact are clearly erroneous; in no instance does Davy demonstrate that anything in the record contradicts any of the hearing judge's findings of fact.[7] In an attorney discipline proceeding, if no exceptions are filed, this Court

---

**7.** Instead of contending that the hearing judge's findings of fact are clearly erroneous, Davy alleges additional facts that are not supported by the record. For example, Davy alleges that Smalls ended the representation because Smalls found new employment, "not because [ ] Davy mistreated [ ] Smalls."

Davy's other factual allegations are equally misguided. For example, Davy contends that she represented Smalls for such "a short time" that "[t]here was not even sufficient time for [ ] Davy to have perpetrated the deceit" with which the Commission charged Davy. Again, Davy does not explain how the hearing judge's findings of fact—including the finding that Davy deceived Smalls—are clearly erroneous.

"treat[s] the findings of fact as established for the purpose of determining appropriate sanctions, if any." Md. R. 16–759(b)(2)(A). Here, unable to discern any meaningful challenge to the hearing judge's findings of fact, we overrule the exceptions and conclude that the hearing judge's findings of fact are established by clear and convincing evidence. *See* Md. R. 16–759(b)(2)(B).

Davy's exceptions are even less clear concerning any issue she raises as to the hearing judge's conclusions of law. Nonetheless, below, we review the hearing judge's conclusions of law, and, to the extent that Davy takes exception to the hearing judge's conclusions of law, we overrule the exceptions.

## B. Contentions that Davy Raises

Before we review the hearing judge's conclusions of law, we address—and specifically reject—seven contentions, not directly challenging the hearing judge's findings of fact and conclusions of law, that Davy raised at oral argument and/or in her exceptions.

First, we reject Davy's contention that the hearing judge erred in not mentioning in her opinion purported evidence of mitigating factors. We do recommend that, in an opinion in an attorney discipline proceeding, a hearing judge discuss—and either credit or discredit—all purported evidence of mitigating factors. Indeed, in his or her opinion, the hearing judge must mention purported evidence of mitigating factors where the hearing judge credits such evidence. *See Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 384, 773 A.2d 463, 467 (2001) (In an attorney discipline proceeding, the hearing judge "must make findings in regards to facts that [he or she] believes mitigate in respect to the [lawyer's] conduct[.]"). However, "[a]bsent indications that" the hearing judge did not consider purported evidence of mitigating factors, where a hearing judge omits the purported evidence of mitigating factors from his or her opinion, we may interpret the omission to mean that the hearing judge did not credit the purported evidence of mitigating factors. *Attorney Grievance*

*Comm'n v. Kreamer,* 387 Md. 503, 528, 876 A.2d 79, 94 (2005) (citation omitted).

Here, there is no indication that the hearing judge failed to consider Davy's purported evidence of mitigating factors. The hearing judge allowed Davy to testify at length on her own behalf. The hearing judge admitted all seventeen exhibits that Davy offered into evidence. After Davy testified, the hearing judge gave Davy an opportunity to be heard as to mitigating factors, and indicated that she would remain on the bench until Davy completed her presentation of mitigating circumstances.

Instead of truly offering information regarding mitigating factors, however, Davy, for the most part, again offered her own version of the facts. For example, Davy stated that she did not believe that she had "overcharged" Smalls, she "had no idea that [Smalls] expected her to stop" acting on Smalls's behalf, and she did not tell Smalls that the federal court had rejected the complaint for filing because she "felt really bad about it and [ ] was embarrassed and [ ] just wanted to fix the problem." The reason the hearing judge did not mention Davy's version of the facts is clear-in her findings of fact, the hearing judge determined otherwise.

Among the purported evidence of mitigating factors, Davy stated that, since her representation of Smalls, McAdams, and Watch Tune Up, she now "escrow[s]" all payments, uses retainer agreements that specify the services to be performed, and no longer charges nonrefundable fees or engagement fees. Essentially, Davy stated that she had changed her ways since her representation of Smalls, McAdams, and Watch Tune Up. Davy did not address, however, why she asked Smalls for additional payments when she knew that the federal court had rejected the complaint for filing, or why she led Smalls to believe that a summons was in the process of being served. The record reflects that Davy offered no mitigating factors relevant to the hearing judge's critical finding that she deceived Smalls as to the status of Smalls's case.

■ Second, we reject Davy's contention that the Commission, not the hearing judge, authored the findings of fact and conclusions of law. In an attorney discipline proceeding, a hearing judge

> does not need to meld together his or her own opinion, taking bits and pieces of each party's proposed findings of facts and conclusions of law, but may adopt one party's filing in its entirety, as long as it accurately reflects the [hearing] judge's independent factual findings, proven by clear and convincing evidence at the hearing, and the legal conclusions flowing therefrom.

*Attorney Grievance Comm'n v. Joseph,* 422 Md. 670, 696, 31 A.3d 137, 153 (2011), *reconsideration denied,* (Nov. 18, 2011), *cert. denied,* —— U.S. ——, 132 S.Ct. 1812, 182 L.Ed.2d 620 (2012).

Third, we reject Davy's contention that the hearing judge's opinion improperly included facts that were not contained in the complaint that McAdams filed against Davy with the Commission. Davy provides no Maryland Rule or case—and we know of none—under which, in an attorney discipline proceeding, a hearing judge's opinion cannot include facts that were not contained in the complaint that the client filed against the lawyer with the Commission. In any event, Davy does not meaningfully dispute that McAdams's complaint "state[d] facts which, if true, would constitute professional misconduct by" Davy. Md. R. 16–731(a).

■ Fourth, we reject Davy's contention that a conditional diversion agreement between her and the Commission prevents the Commission from charging Davy in this case. Dated in August 2009, the conditional diversion agreement concerns Davy's representation of a client, other than Smalls, McAdams, or Watch Tune Up, who had filed a complaint against Davy with the Commission. The conditional diversion agreement states: "This Agreement stays any disciplinary or remedial proceedings **related to the above described incident**[,]" meaning the conditional diversion agreement relates to the other client. (Emphasis added) (paragraph breaks

omitted). Thus, the conditional diversion agreement does not apply to this case, which relates to Davy's representation of Smalls, McAdams, and Watch Tune Up.

Fifth, we reject Davy's contention that the Commission and the hearing judge engaged in an *ex parte* communication. Without support anywhere else in the record, Davy alleges that Docket Entry 043 shows that an *ex parte* communication occurred. Docket Entry 043 states:

10/19/2012 Motion for Extension Time, fd JSF
043
Motion to extend time for filing findings of fact and conclusions of law nunc pro tunc,
fd/jsk
e 10–24–12 (Woodard)

At oral argument, the Commission stated that Docket Entry 043 refers to the Commission's motion to extend time to file its proposed findings of fact and conclusions of law. According to the Commission, Davy received a copy of the motion to extend time, and the Commission did not communicate directly with the hearing judge about the motion. We are satisfied with the Commission's explanation of Docket Entry 043.

Sixth, we reject Davy's contention that, in this case and others, the Commission has "engag[ed] in corruption[,]" "patronage[,]" and a conspiracy to discriminate against female African–American lawyers. Other than her own conclusory accusations, Davy offers no proof of these inflammatory contentions.

Seventh, we reject Davy's contention that the Commission "attack[ed her] integrity through a defamatory and libelous published opinion ... *In re Davy*, 25 A.3d 70 (D.C.App. 2011)[.]"[8] In her opinion, the hearing judge never referred to *Davy*, 25 A.3d 70. Similarly, in its "Petition for Disciplinary

---

**8.** In *Davy*, 25 A.3d at 71, the District of Columbia Court of Appeals issued Davy reciprocal discipline; namely, that Court issued "a one-year suspension with a fitness requirement" based on this Court's order in *Hamilton*, 377 Md. 54, 832 A.2d 170.

or Remedial Action" and "Recommendation for Sanction," the Commission never referred to *Davy*.[9] In any event, in our determination of the appropriate sanction, we do not consider *Davy*.

## C. Violations of MLRPC

### MLRPC 1.1 (Competence)

■ "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." MLRPC 1.1.

In this case, clear and convincing evidence supports the hearing judge's conclusion that Davy violated MLRPC 1.1 in representing Smalls. It is undisputed that Davy attempted to file the complaint, and the federal court rejected the complaint for filing, as Davy had failed to renew her membership in the federal court's bar and to include a civil cover sheet, summons, and disc with the complaint. Similarly, it is undisputed that the federal court later dismissed the complaint because of a lack of subject-matter jurisdiction. *Smalls*, 840 F.Supp.2d at 26.

Likewise, clear and convincing evidence supports the hearing judge's conclusion that Davy violated MLRPC 1.1 in representing McAdams and Watch Tune Up. After Davy filed for bankruptcy on Watch Tune Up's behalf, the bankruptcy court sent Davy three deficiency notices regarding the bankruptcy filing. As part of the bankruptcy filing, Davy submitted a schedule that stated that Watch Tune Up owned a condominium. Davy, however, had not researched land records; thus, as she acknowledged, she was unsure whether McAdams or Watch Tune Up owned the condominium. The schedule listed the condominium's value as $30,000; however,

---

9. In its response to the exceptions, the Commission points out that Davy, not the Commission, called this Court's attention to *Davy*, 25 A.3d 70.

there was no equity in the condominium, and Davy never had the condominium appraised.

## MLRPC 1.2(a) (Allocation of Authority Between Client and Lawyer)

 MLRPC 1.2(a) states:

[A] lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation.

Clear and convincing evidence supports the hearing judge's conclusion that Davy violated MLRPC 1.2(a) in representing Smalls. After learning that there was no case pending in her name in the federal court, on December 3, 2009, Smalls e-mailed Davy, stating that she did not believe that Davy had filed the complaint on November 6, 2009, that Davy had breached their contract, and that, if Davy did not refund the $10,000 that she had paid, she would take "appropriate action." Although Smalls did not expressly state that she was ending the representation, based on Smalls's e-mail, a reasonable lawyer in Davy's position would have realized that Smalls had ended the representation. Upon receipt of Smalls's letter, Davy was not authorized to act further on Smalls's behalf. Nonetheless, without Smalls's permission, after having falsely informed Smalls that the federal court had already agreed to accept the complaint as timely filed, Davy filed a corrective motion in the federal court, and requested that Smalls replenish her account. Although Smalls eventually expressly told Davy that she had ended the representation, Davy took three months to move to withdraw her appearance from the case.

## MLRPC 1.3 (Diligence)

 "A lawyer shall act with reasonable diligence and promptness in representing a client." MLRPC 1.3.

Clear and convincing evidence supports the hearing judge's conclusion that Davy violated MLRPC 1.3 in representing

Smalls. On the day that the representation started, Smalls told Davy that she needed to file a complaint within two weeks; however, Davy did not file the complaint until 9:11 p.m. on the day on which it was due. After learning that the complaint had been rejected by the federal court, Davy failed to notify Smalls of the complaint's rejection or to attempt to correct the deficiency, until after Smalls told Davy that she had learned of the situation and demanded a refund. After Smalls expressly told Davy that that she had ended the representation, Davy took three months to move to withdraw her appearance.

Clear and convincing evidence supports the hearing judge's conclusion that Davy violated MLRPC 1.3 in representing McAdams and Watch Tune Up. After entering into the first retainer agreement, Davy took approximately four months to file for bankruptcy on Watch Tune Up's behalf. Afterward, the bankruptcy court sent Davy three deficiency notices regarding the bankruptcy filing, which she did not completely correct until approximately two months after the date of the original bankruptcy filing.

### MLRPC 1.4 (Communication Generally)

MLRPC 1.4 provides:

(a) A lawyer shall:

\* \* \*

(2) keep the client reasonably informed about the status of the matter; [and]

(3) promptly comply with reasonable requests for information[.]

\* \* \*

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Clear and convincing evidence supports the hearing judge's conclusion that Davy violated MLRPC 1.4 in representing Smalls. After Davy told Smalls that she had filed the com-

plaint, Smalls asked Davy for the case number, which Davy promised to provide; however, Davy made no effort to obtain the case number. Critically, prior to Smalls contacting the federal court, Davy never told Smalls that the federal court had rejected the complaint for filing; rather, Davy provided false information about the availability of the summons and demanded additional payment.

Clear and convincing evidence supports the hearing judge's conclusion that Davy violated MLRPC 1.4 in representing McAdams and Watch Tune Up. Approximately three months after entering into the first written retainer agreement, McAdams asked Davy for a billing statement. Davy failed to provide a billing statement until nearly three months later.

## MLRPC 1.5(a) (Reasonable Fees)

MLRPC 1.5(a) states, in relevant part:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

\*　　\*　　\*

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client; [and]

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services[.]

Although a fee for certain services "may not be unreasonable on its face," the fee is unreasonable if the lawyer

"fail[s] to perform the services to any meaningful degree[.]" *Attorney Grievance Comm'n v. Guida,* 391 Md. 33, 52–53, 891 A.2d 1085, 1096–97 (2006).

Clear and convincing evidence supports the hearing judge's conclusion that Davy violated MLRPC 1.5(a) in representing Smalls. Smalls paid Davy a total of $10,000, and Davy merely prepared and delivered a complaint that the federal court rejected for filing. Not only did the federal court reject the complaint for filing, but the federal court also later dismissed the case because of a lack of subject-matter jurisdiction. *See Smalls,* 840 F.Supp.2d at 26. Additionally, Davy charged Smalls a $500 "nonrefundable engagement fee," even though she did not turn away any potential clients as a result of her representation of Smalls. Under MLRPC 1.5(a), an "engagement fee" is unreasonable where the lawyer "provid[es] no benefit to the client in exchange for the fee." *Attorney Grievance Comm'n v. Stinson,* 428 Md. 147, 184, 50 A.3d 1222, 1244 (2012) (citation and internal quotation marks omitted).

Clear and convincing evidence supports the hearing judge's conclusion that Davy violated MLRPC 1.5(a) in representing McAdams and Watch Tune Up. Although McAdams paid Davy a total of $7,500, Davy never completed Watch Tune Up's dissolution or bankruptcy, or the filing process for McAdams's new business, and never filed for bankruptcy on McAdams's behalf.

### MLRPC 1.5(b) (Communication of Fees)

MLRPC 1.5(b) states:

The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation[.] ... Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

"In a new client-lawyer relationship, [ ] an understanding as to fees and expenses must be promptly established." MLRPC 1.5 cmt. 2.

Clear and convincing evidence supports the hearing judge's conclusion that Davy violated MLRPC 1.5(b) in representing Smalls. During their telephone conversation, Davy told Smalls that she would need a retainer of up to $3,000; however, during their first meeting, Davy told Smalls that she would need a retainer of $5,000. After receiving Smalls's check and credit card information, Davy told Smalls that she would need a retainer of $20,000. The written retainer agreement: (1) was not produced until two weeks after Davy and Smalls first met; (2) stated that the retainer was $5,000, contrary to Davy's earlier statement that the retainer was $20,000; and (3) contained two fees about which Davy had not told Smalls earlier. Although Davy agreed to let Smalls use a payment plan, Davy never explained the details of the payment plan— not even when she produced the written retainer agreement.[10]

 Clear and convincing evidence supports the hearing judge's conclusion that Davy violated MLRPC 1.5(b) in representing McAdams and Watch Tune Up. The first written retainer agreement did not state whether Davy would handle McAdams's bankruptcy, Watch Tune Up's bankruptcy, or both. The second written retainer agreement did not delineate between the amount to be charged for the "business bankruptcy" and the amount to be charged for the "business dissolution." Although the first written retainer agreement stated that McAdams would pay Davy $1,500 as a "non-refundable engagement fee," the second written retainer

---

**10.** Instead, Davy simply demanded additional payments on at least six occasions, *i.e.*, Davy's statement on November 4, 2009, that "[m]am-ma's got to eat, so you're [ ] going to have to pay this kind of money[,]" Davy's request on November 23, 2009, that the account be replenished, the request on November 30, 2009, for Smalls to provide a check, the allegation on December 1, 2009, that Smalls did not pay the filing fee, the request on December 15, 2009, to replenish the account, and finally, Davy's request on December 21, 2009, that Smalls comply with the retainer agreement.

agreement stated that McAdams would pay Davy $7,000 as a "non-refundable engagement fee." Davy did not provide billing statements or other accountings to McAdams until after he asked her for a statement of the legal fees that he had paid; Davy promised a statement, but did not provide one to McAdams until approximately five months after McAdams's first payment.

In representing Smalls, McAdams, and Watch Tune Up, Davy charged fees for such administrative acts as preparing billing statements, even though Davy never explained the administrative fees to Smalls or McAdams, who never consented to the administrative fees. A lawyer may charge a fee for "overhead costs and expenses" only if the lawyer: (1) explains the fee—and its method of calculation—to the client before the representation begins; (2) obtains the client's consent for the fee; and (3) expressly includes the fee in a written retainer agreement. *Attorney Grievance Comm'n v. Kreamer*, 404 Md. 282, 339–40, 946 A.2d 500, 534 (2008).

## MLRPC 1.15(c) (Client Trust Accounts)

MLRPC 1.15(c) states:

Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

A client has given "informed consent" for payments not to be deposited into a client trust account only if the lawyer "communicate[s] the risks associated with a fee arrangement that varies from the standard escrow arrangement." *Attorney Grievance Comm'n v. Chapman*, 430 Md. 238, 277, 60 A.3d 25, 48 (2013).

Clear and convincing evidence supports the hearing judge's conclusion that Davy violated MLRPC 1.15(c) in representing Smalls. Davy did not deposit Smalls's payments into a client trust account. During their first meeting—at which Smalls paid Davy $5,000—Davy did not orally inform Smalls about

client trust accounts. Although the written retainer agreement stated that the retainer would not be deposited into a client trust account, Davy did not point out this provision or orally inform Smalls about client trust accounts.

Clear and convincing evidence supports the hearing judge's conclusion that Davy violated MLRPC 1.15(c) in representing McAdams and Watch Tune Up. Neither the first nor second written retainer agreement mentioned a client trust account, and Davy did not deposit McAdams's payments into a client trust account.

### MLRPC 1.16(d) (Termination of Representation)

■ MLRPC 1.16(d) states:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred.

Clear and convincing evidence supports the hearing judge's conclusion that Davy violated MLRPC 1.16(d) in representing Smalls. Davy did not move to withdraw her appearance in Smalls's case until approximately three months after the representation ended. Davy did not refund the $8,000 to Smalls until approximately a year after the representation ended.

Clear and convincing evidence supports the hearing judge's conclusion that Davy violated MLRPC 1.16(d) in representing McAdams and Watch Tune Up. Approximately one month after correcting the bankruptcy filings—while Watch Tune Up's bankruptcy was ongoing—Davy e-mailed McAdams, stating that she was withdrawing from the representation. Davy did not return the file to McAdams for at least three months. As of approximately five months after her withdrawal, Davy had not refunded $2,000 to McAdams as promised or notified the bankruptcy court that she no longer represented McAdams.

## MLRPC 8.4(c) (Dishonesty, Fraud, Deceit or Misrepresentation)

■■■ "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" MLRPC 8.4(c).

Clear and convincing evidence supports the hearing judge's conclusion that Davy violated MLRPC 8.4(c) in representing Smalls. Although Davy knew that the federal court had rejected the complaint for filing, she falsely led Smalls to believe that the complaint was successfully filed and asked for additional retainer payments. In addition, although Davy knew that no summons had been issued, she falsely told Smalls that she had followed up with the process server. Even after Smalls told Davy that she had discovered there was no case pending in her name in the federal court, Davy failed to tell Smalls that the federal court had rejected the complaint for filing. Instead, Davy told Smalls that she "followed up on [her] claims and [ ] discovered that there was a technical error with the filing[,]" thus falsely implying that she had not known about the federal court's rejection of the complaint for filing until Smalls told her. Equally troubling, before the federal court granted the "Motion for Appropriate Relief *Nunc Pro Tunc*," Davy falsely told Smalls that the federal court had "advised [her] that [the] case [would] be perfected as of the date filed." Although Davy had already sent Smalls a statement that included a charge for Davy's telephone call with the federal court about the complaint, she falsely told Smalls that she would correct the complaint's problems at no charge. Finally, Davy was not honest in her promise to give Smalls a refund, as she did not refund $8,000 to Smalls until a year later—after Smalls had filed a complaint against Davy with the Commission.

## MLRPC 8.4(d) (Conduct Prejudicial to the Administration of Justice)

■■■■ "It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of

justice[.]" MLRPC 8.4(d). "[F]ailure to represent a client in an adequate manner is conduct prejudicial to the administration of justice." *Attorney Grievance Comm'n v. Bleecker*, 414 Md. 147, 175, 994 A.2d 928, 945 (2010) (citation and internal quotation marks omitted). "[T]he commingling of personal and client funds, including the failure to maintain a separate [client] trust account, is prejudicial to the administration of justice." *Fader*, 431 Md. at 427, 66 A.3d at 37 (alteration in original) (citation and internal quotation marks omitted).

Clear and convincing evidence supports the hearing judge's conclusion that Davy violated MLRPC 8.4(d) in representing Smalls, McAdams, and Watch Tune Up. As discussed above, Davy failed to adequately represent Smalls, McAdams, and Watch Tune Up, and failed to deposit Smalls's and McAdams's payments into a client trust account.

## D. Sanction

Unsurprisingly, at oral argument, Davy urged the Court to indefinitely suspend her with the right to reapply after thirty days—seeking, potentially, an even lesser sanction than the one-year suspension that she previously received. *See Hamilton*, 377 Md. 54, 832 A.2d 170. In seeking the indefinite suspension, Davy denied an intent to steal and acknowledged that she should have deposited Smalls's payments into a client trust account. Completely absent from Davy's presentation, however, was any acknowledgement of her deceit and intentional misleading of Smalls. The Commission sought disbarment.

In *Attorney Grievance Comm'n v. Walker–Turner*, 428 Md. 214, 233, 51 A.3d 553, 564 (2012), we stated:

> [This Court] evaluate[s] the facts and circumstances of each case to ensure that the [lawyer']s sanction is commensurate with the gravity and intent of the misconduct. We have looked often to the [American Bar Association]'s standards for attorney sanctions which pose four rhetorical questions as an analytical template: "(1) What is the nature of the ethical duty violated?; (2) What was the lawyer's mental state?; (3) What was the extent of the actual or potential

injury caused by the lawyer's misconduct?; and (4) Are there any aggravating or mitigating [factor]s?"
(Citations omitted).

As to the nature of the ethical duty breached, in addition to violating nine other MLRPC, Davy violated MLRPC 8.4(c) (Dishonesty, Fraud, Deceit or Misrepresentation); and, as to Davy's mental state, Davy's violation of MLRPC 8.4(c) was intentional. In six instances, Davy was intentionally dishonest with Smalls. First, Davy lied to Smalls in stating that she had filed the complaint, whereas Davy knew that the federal court had rejected the complaint for filing. Second, Davy lied to Smalls in stating that she had followed up with the process server, whereas Davy knew that no summons had been issued. Third, Davy lied to Smalls in stating that she had followed up on Smalls's claims and discovered that there was a "technical error" with the filing, whereas Davy already knew that the federal court had rejected the complaint for filing. Fourth, Davy lied to Smalls in stating that the federal court had "advised [her] that [the] case [would] be perfected as of the date filed[,]" whereas Davy knew that the federal court had not yet granted the "Motion for Appropriate Relief *Nunc Pro Tunc*." Fifth, Davy lied to Smalls in stating that she would correct the complaint's problems at no charge, when Davy had already sent Smalls a statement that included a charge for Davy's telephone call with the federal court about the complaint. Sixth, Davy was dishonest in her promise to give Smalls a refund, as she did not refund the $8,000 to Smalls until a year later, after Smalls had filed a complaint against her with the Commission.

 Intentionally violating MLRPC 8.4(c) (Dishonesty, Fraud, Deceit or Misrepresentation) is most egregious misconduct. *See Attorney Grievance Comm'n v. Foltz*, 411 Md. 359, 413, 983 A.2d 434, 466 (2009) ("[I]ntentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in [a lawyer]'s character." (Citation omitted)); *see also Attorney Grievance Comm'n v.*

*Page,* 430 Md. 602, 638, 62 A.3d 163, 184 (2013) ("[C]andor and truthfulness are two of the most important moral character traits of a lawyer." (Citation and internal quotation marks omitted)).

 "[W]hen a[ lawyer] engages in dishonest or fraudulent conduct as proscribed in M[L]RPC 8.4(c), we do not discuss 'degrees' of dishonesty, but generally order disbarment, absent **compelling extenuating circumstances.**" *Foltz,* 411 Md. at 413, 983 A.2d at 466 (emphasis added) (citation omitted). Indeed, in multiple cases, this Court has disbarred lawyers who were intentionally dishonest. *See, e.g., Attorney Grievance Comm'n v. Pennington,* 387 Md. 565, 573, 596, 876 A.2d 642, 647, 660 (2005) (This Court disbarred a lawyer who falsely represented to her clients that their case had settled.); *Attorney Grievance Comm'n v. Ellison,* 384 Md. 688, 711, 716, 867 A.2d 259, 272, 275 (2005) (This Court disbarred a lawyer who falsely represented to a third party that the lawyer no longer represented a client.).[11]

In *Vanderlinde,* 364 Md. at 413–14, 773 A.2d at 485, we stated:

> [I]n cases of intentional dishonesty, misappropriation cases, fraud, stealing, serious criminal conduct and the like, we will not accept, as "compelling extenuating circumstances," anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the "root cause" of the misconduct *and* that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the M[L]RPC.

(Emphasis in original).

Because Davy has refused to even acknowledge the wrongful nature of her conduct, she does not identify any compelling

---

**11.** At oral argument, Davy relied on *Attorney Grievance Comm'n v. Kemp,* 303 Md. 664, 681, 496 A.2d 672, 680 (1985), in which this Court reprimanded lawyers who charged excessive fees, commingled client funds with personal funds, and failed to keep accurate records. In *Kemp,* the lawyers' conduct did not involve intentional dishonesty, fraud, deceit, or misrepresentation; thus, *Kemp* is not comparable.

extenuating circumstances that would excuse her intentional deceit; and, in any event, our own review of the record reveals no such circumstances. Thus, Davy's intentional violation of MLRPC 8.4(c) alone suffices to merit disbarment.

Our conclusion that disbarment is the appropriate sanction is unassailable given the aggravating factors accompanying Davy's conduct and the absence of any identifiable mitigating factors.

Aggravating factors include:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the [attorney] disciplinary proceedings by intentionally failing to comply with rules or orders of the [Commission];

(f) submission of false evidence, false statements, or other deceptive practices during the [attorney] disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of the victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution.

*Attorney Grievance Comm'n v. Sperling,* 432 Md. 471, 495–96, 69 A.3d 478, 492 (2013) (citation omitted).

Here, there are multiple aggravating factors. First, Davy has a prior disciplinary offense. With her consent, this Court previously has indefinitely suspended Davy from the Bar of Maryland. *See Hamilton,* 377 Md. 54, 832 A.2d 170.[12]

---

12. In addition to her prior suspension, before her representation of Smalls—and during her representation of McAdams and Watch Tune Up—Davy entered into the conditional diversion agreement that related to her representation of a client who also had filed a complaint against Davy with the Commission. Thus, at the time Davy committed the MLRPC violations as to Smalls, in addition to having been previously

Second, Davy has shown a dishonest or selfish motive. Specifically, in her representation of Smalls, Davy showed a motive to demand additional payments and keep payments that she had already received. In the written retainer agreement with Smalls, Davy intentionally failed to state that the retainer would be $20,000 because the $20,000 retainer may have discouraged Smalls from hiring Davy. Davy stated that Smalls did not deserve a prompt answer to her question about the summons because Smalls had not made additional payments. Davy intentionally failed to inform Smalls about the federal court's rejection of the complaint for filing because she wanted to mislead Smalls as to the quality of her representation. And, even after Smalls ended the representation, Davy continued to act on Smalls's behalf for financial reasons—*i.e.,* so that she could continue to demand payments from Smalls.

Third, Davy has engaged in a pattern of misconduct involving more than one client. In her representation of Smalls and in her representation of McAdams and Watch Tune Up—*i.e.,* in both of two unrelated matters—Davy violated MLRPC 1.1, 1.3, 1.4, 1.5(a), 1.5(b), 1.15(c), 1.16(d), and 8.4(d).

Fourth, Davy has obviously committed multiple offenses. As discussed above, in her representation of Smalls, McAdams, and Watch Tune Up, Davy collectively violated MLRPC 1.1, 1.2(a), 1.3, 1.4, 1.5(a), 1.5(b), 1.15(c), 1.16(d), 8.4(c), and 8.4(d).

Fifth, Davy has refused to acknowledge the wrongful nature of her conduct, let alone provide compelling extenuating circumstances for her behavior.[13] Davy attributes her egregious

suspended, she was under the supervision of the Commission via a conditional diversion agreement.

**13.** Indeed, Davy has consistently belittled the charges and attempted to shift the focus away from her own misconduct. For example, Davy accuses the Commission of discriminating against her on the basis of her race and gender. Davy even accuses the Commission of "hand-pick[ing]" a female African–American hearing judge to avoid the appearance of discrimination against Davy on the basis of her race and gender. Apparently, Davy did not realize that this Court—not the Commission—referred the case to the hearing judge. *See* Md. R. 16–

misconduct to "good faith errors ... that amount to technicalities[.]" Davy blithely asserts that she "serv[ed her clients] effectively and fruitfully with great energy, devotion and dedication[.]" Although the federal court dismissed Smalls's case because of substantive defects in the complaint, Davy stated that it was Smalls's fault that the federal court dismissed the case.

Sixth, Davy has shown an indifference to making restitution. Davy did not refund any money to Smalls or McAdams until after they had filed complaints against her with the Commission. Indeed, Davy did not refund $8,000 to Smalls until approximately a year after the representation ended. On the day that the Commission's Bar Counsel's investigator met with Davy, she moved to withdraw her appearance in Smalls's case, refunded $2,000 and returned the file to McAdams, and notified the bankruptcy court that she no longer represented McAdams.

Mitigating factors include:

(a) absence of a prior disciplinary record;

(b) absence of a dishonest or selfish motive;

(c) personal or emotional problems;

---

752(a) ("[T]he Court of Appeals may enter an order designating a judge of any circuit court to hear the action[.]").

With her completely baseless allegations of discrimination—including her allegations that the Commission "engag[ed] in corruption" and "patronage[,]" and that the hearing judge was "used as a tool because of her race and gender"—Davy exceeds contending that women and minority attorneys are disproportionately affected by the disciplinary process, and rather levels allegations that the hearing judge and the Commission intentionally engaged in unprincipled behavior. With these allegations, Davy disparages the Maryland Judiciary, demeans the Commission and the attorney discipline process, and most importantly shows that she obstinately refuses to take responsibility for her egregious misconduct.

To be sure, in an attorney discipline proceeding, a lawyer has every right to deny the facts that the Commission alleges, contend that he or she did not violate the MLRPC, offer evidence at the hearing, and/or file exceptions to the hearing judge's findings of fact and/or conclusions of law. Here, however, Davy has failed to meaningfully engage in any of these actions.

(d) timely good faith efforts to make restitution or to rectify consequences of misconduct;

(e) full and free disclosure to [the Commission] or cooperative attitude toward [attorney discipline] proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when:

(1) there is medical evidence that the [attorney] is affected by a chemical dependency or mental disability;

(2) the chemical dependency or mental disability caused the misconduct;

(3) the [attorney]'s recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely;

(j) delay in [attorney] disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l [ ] ) remorse; [and]

(m) remoteness of prior offenses.

*Attorney Grievance Comm'n v. Coppock,* 432 Md. 629, 649 n. 18, 69 A.3d 1092, 1103 n. 18 (2013) (citation omitted).

There are no perceptible mitigating factors.[14] Although the hearing judge permitted Davy a lengthy opportunity to present mitigating circumstances and Davy provided explanations for her misconduct, we would not consider Davy's

---

14. In her presentation of mitigating circumstances, Davy specifically advised the hearing judge that she had not been experiencing a mental disability or personal or emotional problems during her representation of Smalls, McAdams, and Watch Tune Up. Before the hearing judge, Davy stated that, at the time of her prior suspension, *see Hamilton,* 377 Md. 54, 832 A.2d 170, she was "extremely depressed" and had "a nervous breakdown[,]" but "that was a **singular** event in [her] life[.]" (Emphasis added).

explanations to be mitigating factors, even if the hearing judge had credited Davy's statements. For example, we reject Davy's explanation that she did not deposit Smalls's payments into a client trust account because, at the time that Davy began representing Smalls, she was corresponding with the Commission about a prior complaint regarding the written retainer agreement format that she had been using. "[E]very lawyer is presumed to know and abide by the" MLRPC. *Pennington,* 387 Md. at 598, 876 A.2d at 662. Davy alone was responsible for knowing and complying with MLRPC 1.15(c). Davy cannot excuse her violation of MLRPC 1.15(c) by virtue of alleging that—while monitoring her under a conditional diversion agreement—the Commission had not yet told her what written retainer agreement format to use.

In her representation of Smalls, McAdams, and Watch Tune Up, Davy was intentionally deceitful, woefully incompetent, and otherwise in flagrant disregard of several MLRPC. These circumstances—combined with her failure to turn over a new leaf since her previous suspension and reinstatement—convince us that the public would be at risk if Davy were to continue to practice law in Maryland. For the above reasons, we entered the September 5, 2013, per curiam order, immediately disbarring Davy and awarding costs against her.