*Attorney Grievance Commission of Maryland v. Taiwo A. Agbaje*, Misc. Docket AG No. 87, September Term 2012

**ATTORNEY MISCONDUCT — DISCIPLINE — DISBARMENT —** Respondent, Taiwo A. Agbaje, violated Maryland Lawyers' Rules of Professional Conduct 1.8(a) and 8.4(a), (b), (c), and (d). The violations stemmed from Respondent's entering into a Real Estate Investment Partnership Agreement with a current client who had no prior legal or real estate investment experience. The appropriate sanction for Respondent's violations is disbarment.

Circuit Court for Baltimore County
Case No. 03-C-13-002786
Argued: April 4, 2014

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 87

September Term, 2012

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

TAIWO A. AGBAJE

Barbera, C.J.,
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Opinion by Barbera, C.J.

Filed: May 19, 2014

Petitioner, the Attorney Grievance Commission of Maryland ("Commission"), acting through Bar Counsel, has filed with this Court a Petition for Disciplinary or Remedial Action ("Petition") against Respondent, Taiwo A. Agbaje. The Commission alleges violations of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") in connection with Respondent's entering into a Real Estate Investment Partnership Agreement with Dolapo Popoola, while Ms. Popoola was a current client of Respondent. Pursuant to Maryland Rules 16-752(a) and 16-757(c), this Court designated the Honorable Jan Marshall Alexander of the Circuit Court for Baltimore County ("the hearing judge") to conduct an evidentiary hearing and file written findings of fact and conclusions of law. After conducting the hearing, during which both Respondent and Ms. Popoola testified, the hearing judge issued findings of fact and conclusions of law in which he concluded, by clear and convincing evidence, that Respondent had violated MLRPC 1.8(a) (conflict of interest)[1]; and MLRPC 8.4(a), (b), (c), and (d) (misconduct).[2]

---

[1] MLRPC 1.8(a) provides:

A lawyer shall not enter into a business transaction with a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;

(2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and

(3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

[2] MLRPC 8.4 provides, in relevant part:

It is professional misconduct for a lawyer to:

(continued...)

Respondent has filed numerous exceptions relating to process and procedure as well as the substance of the hearing judge's findings of fact and conclusions of law. For reasons we shall explain, we sustain two of Respondent's exceptions related to the hearing judge's factual findings and overrule all remaining exceptions. Notwithstanding our agreement with Respondent on these two limited points, we are in accord with the hearing judge's legal conclusions that Respondent violated MLRPC 1.8(a) and 8.4(a), (b), (c), and (d), and we conclude that disbarment is the appropriate sanction for Respondent's misconduct.

I.

We begin with the procedural history of the case, which sets the stage for several of the exceptions Respondent places before us for decision. Shortly after being served with the Petition and filing his answer, Respondent served Assistant Bar Counsel with a notice of intention to take the deposition of Ms. Popoola, who resided in England at that time. The next day, Assistant Bar Counsel emailed Respondent to inform him that she did not represent Ms. Popoola and therefore was not authorized to accept the notice on her behalf but was

[2](...continued)
      (a)   violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
      (b)   commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
      (c)   engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
      (d) engage in conduct that is prejudicial to the administration of justice;
    . . . .

willing to assist in arranging a video deposition of her.

Assistant Bar Counsel subsequently emailed Ms. Popoola in order to obtain her mailing address and telephone number and inquire whether she was willing to appear voluntarily for a deposition. Ms. Popoola provided only her telephone number—explaining that she was unwilling to provide her home address—and agreed to appear for a telephone deposition. At some point, Assistant Bar Counsel forwarded this information to Respondent. After Assistant Bar Counsel had made several efforts to arrange the deposition of Ms. Popoola, Respondent told Assistant Bar Counsel that "[t]here is no need to pursue [scheduling the deposition] any further with you." Instead, he would "resort to all options provided by Maryland law."

Respondent also served Assistant Bar Counsel with interrogatories. Among other things, Respondent asked Assistant Bar Counsel to provide "Ms. Popoola's full name, current address, age, date and place of birth, Social Security Number, marital status, email address, and telephone number." Assistant Bar Counsel provided the following response: "Dolapo Popoola to the best of petitioner's information and belief, resides in the United Kingdom. Her Telephone number is . . . +44 **** *** *** and her email address is ********@yahoo.co.uk."[3] Shortly thereafter, Respondent filed a motion to compel discovery from Assistant Bar Counsel. He argued that Assistant Bar Counsel had failed to

_____

[3] We have redacted, in the interest of Ms. Popoola's privacy, portions of her telephone number and email address.

provide Ms. Popoola's address and, without it, he could not comply with the Maryland Rule governing depositions, which required that he serve upon Ms. Popoola a notice of deposition containing "the name *and address* of the person to be examined." *See* Md. Rule 2-412(a) (emphasis added). The hearing judge denied the motion, reasoning, in pertinent part:

> I believe [Assistant Bar Counsel] has adequately provided Answers to Interrogatories as required by the Rules . . . . [T]hey are entitled to give you information that is exclusively within their possession. They have guided you as to where you could get certain information that was not in their possession, [and] told you how to contact Ms. Popoola. They do not represent her. . . . [T]hey don't have . . . her address. You could [have] easily obtained that or at least made an attempt to obtain that based on the information that was provided to you, mainly her phone number, her email address as well as the assurance of Counsel . . . that she was going to be cooperative in . . . coordinating with Ms. Popoola to speak with you for a deposition without the need of subpoena or a notice. And you've chosen not to avail yourself of that. And that is your right to do . . . . But I do not find it to be a discovery violation.

Shortly before the commencement of the evidentiary hearing, the Commission, acting through Assistant Bar Counsel, filed a motion to permit Ms. Popoola to testify at that hearing by video conference. Assistant Bar Counsel explained that Ms. Popoola lived in England and her personal appearance at the hearing could not be secured by subpoena. Furthermore, Assistant Bar Counsel asserted that requiring Ms. Popoola to travel internationally in order to appear in person would impose upon her an undue hardship. Assistant Bar Counsel proposed allowing Ms. Popoola to testify over Skype—a real-time video conferencing program that she could access on her home computer—and assured the hearing judge that no other individual would be present in the room during her testimony. The hearing judge

granted the motion, without explanation and over Respondent's opposition.

During the two-day evidentiary hearing, the hearing judge received evidence primarily through the testimony of Ms. Popoola and Respondent as well as various exhibits submitted by both parties. Noteworthy for present purposes, before Ms. Popoola commenced her testimony over Skype, she took an oath to tell the truth. In addition, at Respondent's request, she surveyed the room from which she was testifying, with the video camera, to satisfy the hearing judge that she was not receiving improper assistance.

At the conclusion of the hearing, the hearing judge took the case under advisement. Pursuant to Maryland Rule 16-757(c), the hearing judge was required to file his findings of fact and conclusions of law no later than 45 days after the conclusion of the hearing. After that deadline had passed, and his findings and conclusions had not been docketed by the Clerk of the Circuit Court, the Commission, acting through Assistant Bar Counsel, filed in this Court a motion to extend the 45-day deadline. Assistant Bar Counsel asserted that the hearing judge had completed his findings and conclusions and transmitted them to the Clerk's office before the deadline, but that office had not docketed them timely due to a backlog. Assistant Bar Counsel further noted that the motion for an extension had been filed "with the knowledge and approval of [the hearing judge]." This Court granted the motion, thereby accepting for filing the hearing judge's findings and conclusions, which we set forth below.

II.

The hearing judge determined that Ms. Popoola's testimony was credible and Respondent's testimony, in its entirety, was not credible. He made the following factual findings.

*Legal Representation of Ms. Popoola*

Respondent has been a member of the Bar of this Court since 1996. Since his admission to the Bar, he has been engaged in the general private practice of law. In December 2005, Ms. Popoola retained Respondent to assist her in obtaining an H1B non-immigrant visa and represent her before the United States Citizenship and Immigration Services ("USCIS"). She signed an agreement by which Respondent would perform these legal services for a fee. In addition to retaining Respondent for the services described in the agreement, Ms. Popoola, at some point, discussed with him her desire to apply for "permanent resident" status through the acquisition of a Green Card.

In October 2006, Respondent filed, on Ms. Popoola's behalf, a petition for an H1B visa. Several months later, the USCIS approved the petition, and Respondent advised Ms. Popoola that the petition had been approved. Respondent did not inform Ms. Popoola, in writing or otherwise, that his legal representation of her terminated at that time.

In either June or July 2007, Ms. Popoola paid Respondent $1,000 in connection with her application for a Green Card. Around the same time, Respondent hired Ms. Popoola to tutor his son. Approximately three months later, in an email to Ms. Popoola's employer evidently related to her application for permanent residency, Respondent identified himself

as "the lawyer assisting Ms. Popoola."

*The Partnership Agreement*

In addition to his law practice, Respondent operated an auctioneering and real estate business. On July 17, 2007, Ms. Popoola approached Respondent at his auctioneering office to inquire about purchasing a property that she could turn into a rental unit. Respondent informed her that she did not have enough capital to purchase a property. He proposed, instead, that she partner with him to renovate two properties in Baltimore City and sell those properties for a profit within three months. When Ms. Popoola expressed interest in that proposal, she and Respondent settled upon the two properties the partnership would renovate and sell: one located on James Street (owned by Respondent) and another located on Lorraine Avenue (owned by Respondent's cousin). Respondent subsequently drafted a partnership agreement, which both parties signed that day. The agreement stated, in full:

> This is a partnership agreement between Taiwo Agbaje and Dolapo Popoola for investment in real estate in accordance with the following:
>
> **Business Model**
> Acquire 2 houses on assignment from record owner located at (1) 308 East Lorraine Ave., Baltimore, MD 21208 for $150,000 as is, with the investor-assignee to pay all taxes and liens and (2) 1209 James Street, Baltimore, MD 21223 for $140,000 as is, with the investor-assignee to pay all taxes and liens.
>
> Dolapo will invest in the partnership the sum of $20,000 each for repairs to the two properties and payment of any liens.
>
> Taiwo Agbaje to manage the repairs and has secured the pricing on the homes, will prepare all the legal paperwork.
>
> It is expected that the properties upon completion of repairs will be sold as

follows:

1. 308 East Lorraine Ave, Baltimore, MD 21208 comp market value rehabbed home to date is $215,000

2. 1209 James Street, Baltimore, MD 21223 comp market value rehabbed home is in the neighborhood of $200,000 more or less.

The repairs will take 3 months and the houses will be sold in three months. From the proceeds of the sale, we will pay the record owner the contract amount and the net profit, will be shared equally after deducting each partner's investment outlay.

**Scenario:**

Assume $220,000 sale for 308 east Lorraine.

| | |
|---|---|
| Sale Price: | $220,000 |
| Owner: | $150,000 |
| Gross Profit | $70,000 |
| Refund of Dolapo's investment | $20,000 |
| Net Profit | $50,000 |
| Dolapo's share | $25,000 |
| Taiwo's share | $25,000 |

Real estate taxes and liens will also be paid from gross profits.

This is a real estate investment partnership not a loan or securities investment.
This is the entire agreement of the parties.

After executing the agreement, Ms. Popoola wrote Respondent a check in the amount of $40,000.

At the time she entered into the partnership agreement, Ms. Popoola, in the words of the hearing judge, "was a current client of Respondent" and "[o]ther than the sale of her residence in Great Britain . . . had no prior real estate or investment experience." Furthermore, the hearing judge found that Respondent did not advise Ms. Popoola before she

-8-

signed the agreement that: (1) she could have, or should have, consulted independent legal counsel and/or taken additional time to consider the agreement; (2) real estate investments have significant risks and profits are not guaranteed; (3) the James Street property was in foreclosure and Respondent therefore did not have clear title to the property; (4) Respondent had power of attorney for his cousin's interest in the Lorraine Avenue property; and (5) Respondent could personally profit as the seller, realtor, and auctioneer of the two properties.

At some point after entering into the partnership agreement, Respondent hired a contractor named Karl McDonald to perform repairs on the Lorraine Avenue property. McDonald, however, abandoned the project before its completion because of a dispute with Respondent over payments. Some repairs were made to the Loraine Avenue property. Respondent, however, did not produce receipts for the payments he allegedly made to contractors, nor did he produce receipts for the supplies those contractors allegedly used to perform repairs. On February 1, 2008, Respondent, exercising his authority under the power of attorney, sold the Lorraine Avenue property, on his cousin's behalf, to one of his relatives for $180,000. Respondent did not advise Ms. Popoola that he was selling the property to a relative. Ms. Popoola eventually received the $20,000 she had invested in the property, plus a $2,000 profit.

Respondent produced no evidence demonstrating that any repairs had been made to the James Street property or that he had used any portion of Ms. Popoola's $20,000 investment to prepare the property for sale. At some point in 2008, the property was

foreclosed upon. Ms. Popoola did not receive any return on her investment.

Ms. Popoola regularly called and emailed Respondent requesting updates on the progress of the repairs to the two properties before they were sold or foreclosed upon. Respondent rarely responded to those requests and, when he did, his answers were, in the words of the hearing judge, "persistently misleading."

Based upon these factual findings, the hearing judge concluded, by a clear and convincing evidence standard of proof, that Respondent violated MLRPC 1.8(a) and MLRPC 8.4(a), (b), (c) and (d). The hearing judge explained his legal conclusions, as follows:

### Rule 1.8 Conflict of Interest: Current Clients: Specific Rules

This court, having found facts as described above, concludes, by clear and convincing evidence, that Respondent violated Rule 1.8(a)(1), (2) and (3). The facts show that Respondent was actively engaged in pursuing Permanent Resident status for Popoola at the time that he entered into discussions with her about investing in his real estate business. As such he was obligated to fully disclose to her each detail of the proposal. He never disclosed to her what percentages he was expecting to collect for acting as the real estate broker or the auctioneer. He did not disclose to her that as the owner of the James Street property, and with the Power of Attorney for the Lorraine Avenue property, he had the authority to reduce the profitability of her investment to favor himself. Among other things, he could set the sales price, commission percentages and accept or reject offers. Their levels of experience were vastly disproportionate. Respondent had been actively engaged in the buying and selling of real estate for some time, while Popoola had no prior experience in this area. Respondent never told Popoola that the 2 properties that he directed her to, especially James Street, were distressed by liens, title issues and badly in need of repair. Instead he presented a proposal to Popoola that appeared to guarantee a windfall of $25,000 in excess of her investment within 3 months, on Lorraine Avenue alone. . . . Respondent acknowledged that he never explained the potential risks to Popoola or included that in his proposal. This was a completely one-sided deal where Popoola was exposed to the risk of losing her money, while Respondent was free to use her money without any

-10-

oversight or risk to himself.  In no way can it be said that this was fair or reasonable.

Respondent was obligated to not only suggest to Popoola to seek independent counsel before entering into this agreement, but should have advised her of such, in writing.  It is undisputed that this was not done.  Even after he drafted the agreement, he never suggested that she have it reviewed by another attorney, or to take some time to review it herself.  Instead he had her execute it and took her $40,000 check at the initial meeting. . . . Respondent's actions clearly display a conflict of interest to that of his client.

## Misconduct

### 8.4(a)

This court, for the reasons discussed below, concludes, by clear and convincing evidence, that Respondent violated Rules 8.4(b), (c) and (d) and as a consequence thereof is in violation of Rule 8.4(a).  Attorney Grievance Commission v. Foltz, 411 Md. 359 (2009).

### 8.4(b)

This court, having made findings of fact as described above, concludes . . . that Respondent violated Rule 8.4(b).

This court concludes that Respondent committed the criminal act of theft, in that he willfully and knowingly utilized deception to obtain control over his client Popoola's $40,000 investment.  Annotated Code of Maryland, Criminal Law § 7-104(b)(1), (2) and (3).  Respondent committed this act when he failed to advise Popoola that his profit making proposal was not based on established market values, appraisals or comparable sales.  He also failed to disclose to her the potential risk of losing all or part of her investment.  As well, he failed to disclose to her that he could profit from her financial loss.  To the contrary, he presented the proposal as if it were a guarantee to return a substantial profit within 3 months.  Essentially, this was a fraudulent inducement.

### 8.4(c)

This court, having made findings of fact as described above, concludes, by clearing and convincing evidence, that Respondent violated Rule 8.4(c).

Honesty is of paramount importance in the practice of law.  Attorney Grievance Commission v. Ellison, 384 Md. 688 (2005).  Candor and

-11-

truthfulness are two of the most important moral character traits of a lawyer. Attorney Grievance Commission v. Myers, 333 Md. 440 (1994). This court concludes that Respondent displayed a persistent pattern of dishonesty and deceit toward his client, Popoola. This started with suggesting that she invest in properties that were distressed by lack of repair, liens, and delinquent mortgage payments. While he disclosed to her that he had an interest in the properties, he did not tell her that he had the ability to manipulate the sale prices, costs of repairs and fees, commissions and settlement costs to his financial advantage. When Popoola became concerned about the lack of progress of the repairs and sales, Respondent often avoided her communications. When Respondent did respond to Popoola, typically through email, he misled her with a series of excuses and deceptions. At one point he told her that he was pursuing criminal charges against the contractor who abandoned the repair work. . . . At hearing, Respondent acknowledged that he took no such action. Without any consultation with Popoola, Respondent sold the Lorraine Avenue property to his relative at a price that was $40,000 less than was stated in the REIP. He also gave the relative an additional $10,800 in settlement assistance. . . .

Respondent's dishonesty and deceit with regard to the James Street property was worse. In a December 11, 2007 email to Popoola, Respondent indicates that he had a buyer for the property and that the contract had been executed and loan approved. . . . This contract was never produced by Respondent. Months later, Respondent told Popoola that he had found tenants for the property who had an option to buy it. Respondent states that he will keep the monthly rental payments as reimbursement for the mortgage payments that he was paying. . . . The clear and convincing evidence produced showed that there were no renters and Respondent had not been paying the mortgage on the James Street property, which was by this time in foreclosure. As Popoola's inquiries continued, Respondent next tells her that he has rented the property to a nonprofit organization . . ., which again, was untrue. In fact, a review of Respondent's emails submitted into evidence show a pattern of excuses, deceptions and lies. At various times, he blames his lack of response to Popoola's calls on poor phone service, illness, being away on travel, and being overwhelmed with problems. When Popoola pressed further for resolution, Respondent tried to stall her efforts with offers for her to purchase other properties. . . .

### 8.4(d)

This court, having made findings of fact as described above, concludes, by clear and convincing evidence, that Respondent violated Rule 8.4(d).

-12-

Conduct which is likely to impair public confidence in the profession, impact the image of the legal profession and engender disrespect for the court is conduct prejudicial to the administration of justice. Attorney Grievance Commission v. Childress, 360 Md. 373 (2000).

As stated, Respondent utilized his skill, knowledge and training as a member of the bar to induce his client to give him $40,000 to invest in distressed properties, owned and/or controlled by him. Respondent induced Popoola to enter into an agreement which was overwhelmingly beneficial to Respondent's financial situation, but provided substantial risks that his client could lose all or part of her investment. He then commenced a pattern of avoidance, delay, denial and falsehoods to prevent her from finding out the truth of his scheme. Most assuredly, Respondent's actions and conduct were prejudicial to the administration of justice.

### III.

"In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record." *Attorney Grievance Comm'n v. Page*, 430 Md. 602, 626 (2013). "[W]e accept the hearing judge's findings of fact as prima facie correct unless shown to be clearly erroneous." *Attorney Grievance Comm'n v. Lara*, 418 Md. 355, 364 (2011). "Consistent with the standard of review for factual findings . . . we have iterated that the judge 'may elect to pick and choose which evidence to rely upon.'" *Attorney Grievance Comm'n v. Kreamer*, 404 Md. 282, 311 (2008) (quoting *Attorney Grievance Comm'n v. Harris*, 403 Md. 142, 158 (2008)). Furthermore, "[t]he Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses." Md. Rule 16-759(b)(2)(B). We review *de novo* the hearing judge's conclusions of law. Md. Rule 16-759(b)(1). The ultimate decision as to whether an attorney has engaged in professional misconduct therefore lies with this Court. *Attorney Grievance Comm'n v. Joehl*,

335 Md. 83, 88 (1994).

When a party files exceptions to the hearing judge's findings of fact, those exceptions will be overruled so long as the findings are not clearly erroneous. *Attorney Grievance Comm'n v. Manger*, 396 Md. 134, 146 (2006) (citation omitted). When a party takes exception to the hearing judge's conclusions of law, those exceptions will be overruled so long as the conclusions are supported by the facts found. *Id.* at 146-47. Respondent has filed numerous exceptions, which we shall address in turn.

*Exceptions Related to Rulings on Motions
and Conduct of Assistant Bar Counsel*

Respondent's first exception concerns the hearing judge's denial of his motion to compel the Commission to disclose Ms. Popoola's address in England. Respondent claims that the Commission's failure to provide the address prejudiced his ability to take Ms. Popoola's deposition. He contends that, without the address, he could not comply with the "mandatory notice" requirement of Maryland Rule 2-412(a) and thereby guarantee her attendance at the deposition.

The record reflects, and Respondent does not deny, both that the Commission had no independent knowledge of Ms. Popoola's address in England and that Assistant Bar Counsel made a good faith effort to obtain the address, but Ms. Popoola was unwilling to provide it. The discovery rules required no more from Assistant Bar Counsel. *See* Md. Rule 2-421(b) ("An answer [to an interrogatory] shall include all information *available to the party* directly or through agents, representatives, or attorneys.") (emphasis added). In any event,

Respondent has not demonstrated that he was prejudiced by the denial of his motion to compel. He does not dispute that Assistant Bar Counsel offered to arrange a telephone deposition of Ms. Popoola and Ms. Popoola confirmed, in writing, her willingness to appear. Moreover, Respondent does not dispute that he never followed up with Assistant Bar Counsel to have the deposition scheduled. Consequently, the deposition did not occur. Given these circumstances, the hearing judge neither erred nor abused his discretion in denying the motion to compel. Accordingly, the exception is overruled.

Respondent's next exception concerns the hearing judge's granting the Commission's motion to allow Ms. Popoola to testify at the evidentiary hearing over Skype. Respondent argues that, even assuming Ms. Popoola resided in England, the Commission did not explain adequately why traveling to Maryland would impose upon her an undue cost or hardship. Respondent claims that citizens of England—who do not require a visa to visit the U.S.—travel to this country in order to testify in court "all the time." He further argues that the Commission's motion did not comply with certain requirements set forth in Maryland Rule 2-513, the Rule governing testimony taken by telephone. Finally, he contends that the hearing judge failed to implement safeguards to guarantee the integrity of Ms. Popoola's video testimony.

We disagree on all fronts. Regardless of whether requiring Ms. Popoola to travel to Maryland would have imposed upon her an undue cost or hardship, the hearing judge lacked jurisdiction to enforce a subpoena compelling her attendance at the evidentiary hearing. *See*

*Attorney Grievance Comm'n v. Gallagher*, 371 Md. 673, 701-02 (2002) ("the subpoena powers of the State of Maryland stop at the state line") (quoting *Bartell v. Bartell*, 278 Md. 12, 19 (1976)). Thus, to the extent Ms. Popoola was unwilling or unable to appear personally, allowing her to testify over real-time video conference constituted a reasonable alternative. Furthermore, Respondent's reliance upon Rule 2-513 is misplaced. There was no reason for Assistant Bar Counsel to satisfy the requirements of that Rule, including the requirement that all motions be filed at least 30 days before the hearing, because, by its plain language, the Rule applies only to testimony taken by "landline telephone"—not video conference.

Likewise, there is no merit to Respondent's claim that the hearing judge did not impose reasonable safeguards to ensure the integrity of Ms. Popoola's testimony. Maryland Rule 5-611(a) affords trial judges broad discretion to control "the mode . . . of interrogating witnesses and presenting evidence so as to . . . make the interrogation and presentation effective for the ascertainment of the truth." The record reflects that the hearing judge required Ms. Popoola to take the same oath to tell the truth that she would have taken had she appeared personally in the courtroom. Moreover, the judge required her to survey the room in which she was testifying, with her video camera, to confirm that she was alone. Our conclusion that the hearing judge did not abuse the broad discretion afforded to him in this context is unchanged by Respondent's complaint that Ms. Popoola referred throughout her testimony to a computer screen other than the one displaying the Skype program. The record

reflects that reference to the second computer was necessary in order to allow Ms. Popoola to review electronic versions of the Commission's exhibits, which Assistant Bar Counsel had sent to Ms. Popoola in advance of the hearing. The record is devoid of evidence indicating that she consulted the second computer for any other purpose. For all of these reasons, we overrule Respondent's second exception.

Respondent's third exception challenges the circumstances that led to Assistant Bar Counsel filing a motion to extend the deadline for the hearing judge to file his findings of fact and conclusions of law. Respondent points out that the deadline, under Maryland Rule 16-757(c), was September 3, 2013, but the findings and conclusions were not docketed until three days later. Respondent claims that, after Assistant Bar Counsel discovered that the findings and conclusions had not been docketed by the September 3 deadline, she contacted the hearing judge's chambers, without first notifying Respondent, and engaged in an *ex parte* communication with the judge related to the filing of a motion for an extension. Respondent further complains that the hearing judge failed to notify him of the *ex parte* communication with Assistant Bar Counsel after the fact, as he was required to do under the Maryland Code of Judicial Conduct. All of this, Respondent argues, is evidence of the hearing judge's bias and inattentiveness, which manifested themselves in his findings and conclusions.

During oral argument before this Court, Assistant Bar Counsel clarified the extent of her communication with the hearing judge's chambers related to the filing of the motion for an extension. She explained that she spoke only to the hearing judge's law clerk, not the

hearing judge himself. During that conversation, she discovered that the findings and conclusions had been submitted timely to the Clerk's office, but had not been docketed timely by that office. She conceded that she did not contact Respondent before communicating with the hearing judge's chambers but emphasized that Respondent received a copy of the Commission's motion and was afforded sufficient time to oppose its merits. In *Attorney Grievance Commission v. Davy*, 435 Md. 674, 697 (2013), we rejected an exception similar to the one Respondent presents, reasoning that the respondent in that case "received a copy of the motion to extend time, and the Commission did not communicate directly with the hearing judge about the motion." We reach the same conclusion here, and therefore overrule the exception.

Respondent's fourth exception alleges that Assistant Bar Counsel received improper legal advice from her father at some point during the evidentiary hearing. This exception has no basis in the record. The affidavit of Respondent's wife, on which he relies in support of this exception, states that Assistant Bar Counsel received what appeared to be legal advice from "a lawyer or staff with the Attorney Grievance Commission"—*not* Assistant Bar Counsel's father. This is consistent with Assistant Bar Counsel's disclosure to the hearing judge at the beginning of the hearing that she was joined by co-counsel. Nothing in the Maryland Rules prohibits a lawyer from consulting with co-counsel during a hearing. Accordingly, we overrule the exception.

*Exceptions to Findings of Fact*

-18-

We first address Respondent's broad challenge to the hearing judge's crediting Ms. Popoola's testimony and relying upon that testimony in making his findings of fact. The general rule is that we defer to the credibility findings of the hearing judge. We do so because the hearing judge, not this Court, "is in the best position to assess the demeanor-based credibility of a witness." *See Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 50 (2006). Respondent argues that, in light of Ms. Popoola's "multiple instances of failure[] to remember facts with sufficient detail," the hearing judge improperly credited her testimony and, therefore, her testimony cannot serve as support for the hearing judge's findings of fact. We disagree. Ms. Popoola remembered all the material facts of her dealings with Respondent. It is of no moment, for example, that seven years after the fact, Ms. Popoola could not remember the precise date on which she and Respondent entered into their initial retainer agreement. Accordingly, we overrule Respondent's general exception to the hearing judge's finding Ms. Popoola to be a credible witness, and turn to his specific exceptions to the findings of fact.

Respondent excepts to several of the Commission's factual averments in the Petition, claiming that the Commission did not establish those averments by clear and convincing evidence. We consider below only those exceptions to averments about which the hearing judge made specific factual findings *See* Md. Rule 16-758(b) (providing only for "exceptions to the findings and conclusions of the hearing judge"). We overrule Respondent's exceptions to the Commission's averments that the hearing judge did *not*

resolve, because Respondent suffered no prejudice. The hearing judge's "failure" to make any findings in connection with those averments could not have redounded to the prejudice of Respondent; if anything, the hearing judge's silence on the Commission's averments was to the disadvantage of the Commission, not Respondent.

Respondent excepts to the hearing judge's factual finding that, after Respondent completed legal services for Ms. Popoola related to her H1B visa, he never notified her that the attorney-client relationship had been terminated. He contends that the Commission presented no "clear and convincing evidence" in support of this finding. We disagree. Ms. Popoola testified that Respondent never informed her—in writing or otherwise—that he was no longer her attorney. The hearing judge credited that testimony. Accordingly, we overrule Respondent's exception.

We next address Respondent's exception to the hearing judge's finding that Ms. Popoola paid Respondent $1,000 in June or July of 2007 for legal services related to her application for permanent residency. Respondent argues that there is "no evidence" to support this finding. As Respondent concedes, however, the hearing judge based this finding upon the testimony of Ms. Popoola, which he fully credited. We therefore overrule the exception.

Respondent excepts to the hearing judge's finding that, other than the sale of her own home in England, Ms. Popoola had no prior real estate investment experience when she approached Respondent to inquire about purchasing properties. Respondent argues that Ms.

Popoola's own testimony does not support such a finding, as she testified that she had owned and sold homes in England, North Carolina, and Maryland. Respondent incorrectly equates home ownership with expertise in real estate investments. Although he is correct that Ms. Popoola owned and sold three homes before entering into the partnership agreement, the record reflects that she had no separate experience purchasing investment properties. Thus, we find no support for Respondent's implied suggestion that he and Ms. Popoola, at the time they formed their partnership, were on equal footing in terms of relevant knowledge and experience. Accordingly, we overrule Respondent's exception.

Respondent next excepts to the finding that he did not disclose to Ms. Popoola the extent to which the James Street property was encumbered by liens and unpaid taxes. In support of this exception, he relies exclusively upon his testimony that he advised Ms. Popoola "that the taxes and liens couldn't be . . . more than $3,000." Ms. Popoola testified that she had "no idea whatsoever" about the outstanding taxes, nor was she informed about any liens on the James Street property. The hearing judge credited Ms. Popoola's testimony and did not credit any part of Respondent's testimony. We therefore overrule the exception.

Respondent's next exception concerns the hearing judge's finding that Respondent did not disclose to Ms. Popoola, at the time he and she executed the partnership agreement in July 2007, that the James Street property was in foreclosure. He argues, and the record supports, that the property was not in foreclosure at the time they entered into the agreement. The record shows that the foreclosure action was not filed until several months after he and

Ms. Popoola formed their partnership. Because the record does not support the finding that the James Street property was in foreclosure, or was reasonably at risk of foreclosure, at the time he and Ms. Popoola signed the partnership agreement, we sustain Respondent's exception on this limited point.

Respondent next excepts to the hearing judge's finding that he failed to explain to Ms. Popoola the nature of potential conflicts of interest arising out of his various connections to the James Street and Lorraine Avenue properties. The entirety of his argument is that he "testified that disclosures were made." Ms. Popoola's testimony, which the hearing judge credited, demonstrates otherwise. She testified that Respondent never explained to her the possible ways in which his "fiduciary relationship" with the owner of the Lorraine Avenue property conflicted with the interests of the partnership. Nor did he disclose to her, in the partnership agreement or elsewhere, the amount of the profits he would, or could, collect as a fee for his services as the realtor and/or auctioneer. All of this information was critical to Ms. Popoola's making an informed decision regarding her investment. Accordingly, we overrule the exception.

Respondent excepts to the hearing judge's finding that he failed to disclose to Ms. Popoola that he held a power of attorney for his cousin's interest in the Lorraine Avenue property. We sustain this exception. At the hearing, Assistant Bar Counsel asked Ms. Popoola whether Respondent ever told her that he held a power of attorney for the seller of Lorraine Avenue, and Ms. Popoola answered, "yeah, he did."

Respondent's next exception concerns the hearing judge's finding that Respondent failed to produce any third-party receipts for "home improvement supplies and repairs on the properties" and for "payments to home improvement and repair workers on the properties."[4] Respondent argues that he produced, during discovery, "cancelled checks for payments made to Karl McDonald in the amount totaling $11,000," which were admitted into evidence at the hearing. Those checks, he asserts, are "evidence of receipt[s] for repairs and to workers." The hearing judge's finding regarding Respondent's failure to produce any receipts was well supported by the record. No receipts were entered into evidence at the hearing and Ms. Popoola testified that Respondent never provided her with receipts for the purchase of supplies or the payment of workers' wages in connection with the renovations to the Lorraine Avenue property. Respondent, when questioned by Assistant Bar Counsel, admitted that he could not produce receipts to confirm the amount of any of the payments he professed to have made to pay other laborers to step in and complete the work that McDonald abandoned. We therefore overrule the exception.

Respondent next excepts to the hearing judge's finding that no portion of Ms. Popoola's $20,000 investment in the James Street property was used for repairs or other

_____

[4] Respondent excepts to an averment in the Petition that he did not "manage the repairs" of the two properties or hire a licensed contractor to complete the repairs. The hearing judge made no such specific finding as to this averment. Rather, he found, and the record reflects, that Respondent arranged for a contractor to complete some repairs to the Lorraine Avenue property, but he failed to produce evidence of any repairs to the James Street property.

improvements to that property, as was required by the partnership agreement. Citing his own testimony and his personal accounting of construction-related costs at the James Street property, Respondent alleges that he arranged for various renovations of the property costing over $20,000. The hearing judge did not credit Respondent's testimony related to this or any other matter and, as we noted above, Respondent failed to present third-party receipts to corroborate what he alleged to be the costs of repairs. Accordingly, we overrule the exception.

Respondent's next exception concerns the hearing judge's finding that he failed to "advise Popoola that the purchaser of Lorraine Avenue was his relative." Respondent asserts that he informed Ms. Popoola that the property had been sold to his niece. Although the record indeed reflects that Respondent informed Ms. Popoola that his niece was the buyer of the Lorraine Avenue property, Ms. Popoola's testimony, credited by the hearing judge, reflects that Respondent made this disclosure only *after* the sale had taken place. It was incumbent upon Respondent to advise Ms. Popoola of this fact prior to the sale in order to afford her a reasonable opportunity to consider whether such a sale was in the best interest of the partnership. We therefore overrule Respondent's exception.

Respondent excepts to the finding that he misled Ms. Popoola in responding to her numerous inquiries about the status of her investment in the James Street property. According to Respondent, "he advised Ms. Popoola of the status of the property at numerous times." Respondent is correct that the record contains several emails from him to Ms.

Popoola concerning repairs to the James Street property. Nevertheless, the record also supports the hearing judge's description of those emails as "persistently misleading." Respondent stated, for example, that "some repairs [to the James Street property] started" and "[t]he work on James Street is resumed [and] should be finished shortly." Given the hearing judge's finding that no repairs to the James Street property had been completed, these statements were at best misleading and at worst fraudulent. Consequently, we overrule the exception.

*Exceptions to Conclusions of Law*

As a preliminary matter, Respondent contends that the hearing judge's conclusions of law must be "rejected in [their] totality" because they are drawn from unsupported factual findings. For the reasons discussed above, other than the two instances in which we sustained Respondent's exceptions, we accept the hearing judge's findings of fact as fully supported by the record. We therefore overrule this general exception. We turn, then, to address Respondent's specific exceptions related to the hearing judge's legal conclusions.

**MLRPC 1.8(a)**

Respondent first excepts to the hearing judge's conclusion that he violated MLRPC 1.8(a). Respondent does not challenge the hearing judge's conclusion that he failed to comply with the various disclosure requirements of Rule 1.8(a)(1)-(3). Rather, his argument reduces to the assertion that a necessary predicate of any Rule 1.8 violation is the existence of an attorney-client relationship and, at the time he and Ms. Popoola entered into the

partnership agreement, no such relationship existed.

We have acknowledged in the past, and it bears repeating here, that "[w]hat constitutes an attorney-client relationship is a rather elusive concept." *Attorney Grievance Comm'n v. Brooke*, 374 Md. 155, 172 (2003) (quoting *Attorney Grievance Comm'n v. Shaw*, 354 Md. 636, 650 (1999)). The general rule is that:

An attorney-client relationship is formed when:

(1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and . . .

(b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide [legal] services.

*Id.* at 174 (quoting Restatement (Third) of the Law Governing Lawyers § 14 (2000)). Thus, "[t]he relationship may arise by implication from a client's reasonable expectation of legal representation and the attorney's failure to dispel those expectations." *Id.* at 175. "[T]he lack of any explicit agreement or payment arrangement [does] not preclude the formation of an attorney-client relationship." *Id.* at 173. "The services of an attorney to the client may be rendered gratuitously but the relationship of attorney and client nonetheless exists." *Id.* at 174 (quoting *Attorney Grievance Comm'n v. James*, 355 Md. 465, 476 (1999)).

Respondent does not dispute that he performed legal work for Ms. Popoola beginning in 2005. He contends, however, that he was no longer her lawyer when they commenced their business relationship approximately two years later. In support of this argument, he relies upon the fact that the only explicit agreement between the parties for legal services

-26-

related to Ms. Popoola's application for an H1B visa. That agreement, Respondent asserts, did not mention or contemplate an application for a Green Card. Respondent therefore claims that the scope of his representation of Ms. Popoola was limited to obtaining the H1B visa on her behalf and, when he did so in March 2007, the attorney-client relationship terminated. We are unconvinced.

The record reflects that, around the same time she retained him in 2005, Ms. Popoola discussed with Respondent her desire to achieve "permanent resident" status through the acquisition of a Green Card. Then, during or shortly before July 2007—the month Ms. Popoola and Respondent formed their partnership—she paid him $1,000 to represent her in connection with her application for permanent residency. Such a payment, we have held, constitutes "rather conclusive evidence of the establishment of the attorney-client relationship." *See Brooke*, 374 Md. at 173-74 (quoting *James*, 355 Md. at 476). If there existed any doubt regarding Ms. Popoola's belief that Respondent remained her lawyer, she made her intentions clear one month later when she sent him an email in which she referred to him as her attorney.

Respondent, for his part, never expressed, in writing or otherwise, his "lack of consent" to assist Ms. Popoola in connection with her application for a Green Card. *See Brooke*, 374 Md. at 174. Instead, his actions—including his acceptance of Ms. Popoola's $1,000 payment in the summer of 2007 and his subsequent email to her employer stating that he was "the lawyer assisting Ms. Popoola"—evidence his intent to continue providing legal

services to her.  Respondent is correct that a lawyer need not necessarily write a "case closed letter" in order to terminate a legal relationship with a client, but the lawyer is required to do *something* to dispel the client's reasonable expectation of legal representation.  Here, the record supports the hearing judge's finding that Respondent took no such action.

Given our conclusion that the record contains clear and convincing evidence that an attorney-client relationship between Respondent and Ms. Popoola existed at the time they entered into the partnership agreement, we agree with the hearing judge, for the reasons stated in his written conclusions of law, that Respondent violated the requirements of MLRPC 1.8(a)(1)-(3).  We therefore overrule the exception.

### MLRPC 8.4(b)

Respondent next challenges the conclusion that he committed theft in violation of Maryland Code, § 7-104(b) of the Criminal Law Article (2002, 2012 Repl. Vol.) (hereinafter "§ 7-104(b)") and, as a consequence of that criminal act, violated MLRPC 8.4(b).

It is well established that a conviction is not required to find a violation of MLRPC 8.4(b).  *Attorney Grievance Comm'n v. Jarosinski*, 411 Md. 432, 454 (2009).  A court must find only clear and convincing evidence of conduct that would violate a criminal statute.  *Id.* The crux of the 8.4(b) analysis then becomes "whether an attorney's criminal act 'reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects.'" *Attorney Grievance Comm'n v. Thompson*, 367 Md. 315, 324 (2001).

Section 7-104(b) provides:

A person may not obtain control over property by willfully or knowingly using deception, if the person:
   (1)  intends to deprive the owner of the property;
   (2)  willfully or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or
   (3)  uses, conceals, or abandons the property knowing the use, concealment, or abandonment probably will deprive the owner of the property.

Respondent argues that the hearing judge's finding that he committed theft is clearly erroneous, reasoning that he did not induce Ms. Popoola, fraudulently or otherwise, to enter into the partnership agreement with him.  He claims, instead, that he was "minding his own business" when Ms. Popoola approached him.[5]  Respondent further claims that Ms. Popoola conceded that "the terms of the agreement were discussed with her and that she read the agreement," evidently suggesting that she was aware of the numerous risks associated with her investment.  Respondent disputes the hearing judge's characterization of the partnership agreement as guaranteeing a profit for Ms. Popoola and the judge's conclusion that Respondent stood to enjoy a financial gain while Ms. Popoola, alone, bore the risk of financial loss.

We overrule this exception.  The record establishes that Respondent used deception, in violation of § 7-104(b), to obtain control over Ms. Popoola's $40,000 investment.

---

[5]  Respondent appears to except to the hearing judge's finding that Ms. Popoola approached him "to speak with him about buying properties that she could turn into rentals," arguing that the hearing judge was "wrong about the statement regarding 'rentals.'"  We disagree.  The hearing judge credited Ms. Popoola's testimony that she approached Respondent about purchasing cheap investment properties in Baltimore City that could be transformed into rental units.

Respondent took advantage of Ms. Popoola's inexperience in investing, faith in his experience in that area, and trust in him as an attorney and acquaintance. To make investing more attractive to Ms. Popoola, Respondent employed deceit. He did not convey to her the risk of financial loss attendant to all real estate investments. Rather, the message he communicated in the agreement itself was that profit was a certainty. Nor did he disclose details that would have allowed Ms. Popoola to make an informed assessment of the return she could expect to receive on her investment, such as the amount of existing liens and taxes for which the partnership would be responsible. Finally, he concealed the extent of his personal interest in the venture, including the amount of the commission he would receive as realtor and auctioneer of the properties before any profits were paid to the partnership.

This conduct plainly reflects adversely on Respondent's honesty and trustworthiness. Our conclusion that Respondent used deceit to obtain Ms. Popoola's investment is unchanged by the facts that Ms. Popoola was the one who approached Respondent for advice about investing or that, as a partner, he had a stake in the success of their venture. Accordingly, we affirm the legal conclusion that Respondent violated MLRPC 8.4(b).

### MLRPC 8.4(c)

Respondent excepts, on similar grounds, to the hearing judge's conclusion that he violated MLRPC 8.4(c) through "a persistent pattern of dishonesty and deceit" toward Ms. Popoola. Respondent, again, challenges the factual findings underlying the hearing judge's conclusion. He disputes, for instance, that he guaranteed Ms. Popoola a profit, stood to make

money while only she risked a loss, failed to disclose the extent to which the properties were in need of repairs, and failed to disclose that the James Street property was subject to liens.

As discussed, the record reflects that Respondent was dishonest and deceitful in inducing Ms. Popoola to enter into the Real Estate Investment Partnership Agreement. That finding, alone, supports a violation of MLRPC 8.4(c). We nonetheless shall address Respondent's specific exceptions to that legal conclusion.

Respondent excepts to the hearing judge's finding that he misled Ms. Popoola in telling her that he was pursuing criminal charges against McDonald—the contractor who had abandoned the project at the Lorraine Avenue property—when, in fact, Respondent had not pursued any such charges. Respondent, however, does not dispute that he informed Ms. Popoola that he was pursuing the criminal charges against McDonald and admits that he failed "to complete the task of pursuing [those] criminal charges." We therefore overrule the exception.

Respondent excepts to the hearing judge's finding that Respondent misled Ms. Popoola in telling her that he had found, first, a buyer, then, a tenant, for the James Street property, when he had not. The hearing judge found that "there were no renters" for the property. None of the exhibits entered into evidence at the hearing, nor any other portion of the record, reflects that Respondent found a buyer or renter for the James Street property. In representing that he had, Respondent misled Ms. Popoola. We therefore overrule this exception.

As to the hearing judge's basing his conclusion that Respondent violated MLRPC 8.4(c) on the finding that Respondent lied to avoid Ms. Popoola's communications, Respondent argues that there was no evidence of "any dishonest reason . . . responsible for the communication gaps." Respondent claims that he presented evidence demonstrating that he failed to respond to certain communications because he was "overworked . . . dealing with law practice, auction business and trying to complete work on the [Lorraine Avenue and James Street properties]." This evidence came in the form of Respondent's representations, in emails to Ms. Popoola, that he was busy, ill, or otherwise unable to respond. The hearing judge did not credit any of those representations.

In the end, the record demonstrates that, subsequent to inducing Ms. Popoola to enter into the partnership agreement, Respondent engaged in further deceit. He misled Ms. Popoola as to the progress of renovations and as to the likelihood that the James Street property would be sold or rented. All the while, he avoided her attempts to contact him regarding the status of the repairs. We therefore conclude, as did the hearing judge, that Respondent violated MLRPC 8.4(c).

**MLRPC 8.4(d)**

Respondent excepts to the hearing judge's conclusion that he violated MLRPC 8.4(d) through conduct likely to impair public confidence in the legal profession, harm the image of the profession, and engender disrespect for the court. Respondent argues that his conduct cannot be considered prejudicial to the administration of justice because Ms. Popoola has

been able to avail herself of civil remedies for breach of contract and he "did not do anything" to prevent her from filing criminal charges against him. We overrule Respondent's exception. Trustworthiness is one of the most important qualities in a lawyer. Here, Ms. Popoola testified that she trusted Respondent, in part, because he was an attorney. When an attorney proves untrustworthy, as was the case here, the trustworthiness of every member of the Bar is susceptible to being called into question, thereby diminishing the public's confidence in the legal profession. *See Attorney Grievance Comm'n v. Whitehead*, 405 Md. 240, 260 (2008); *Attorney Grievance Comm'n v. Pak*, 400 Md. 567, 608 (2007). We conclude, as did the hearing judge, that Respondent violated MLRPC 8.4(d).

*Proposed Amendment to the Maryland Rules*

Noting that the Maryland Rules governing attorney grievance actions impose no limitations period for the filing of such matters, Respondent urges this Court to follow the lead of several of Maryland's sister states and adopt a limitations period. We decline Respondent's request for an amendment to the Maryland Rules. The purpose of these proceedings is to review the findings and conclusions of the hearing judge, rule on any exceptions, and, when necessary, impose an appropriate sanction for the attorney's unprofessional conduct. *See* Md. Rule 16-759. This is not the proper forum for us to entertain changes to the Maryland Rules. The process of promulgating any change begins in the Standing Committee on Rules of Practice and Procedure.

IV.

-33-

Having determined that the hearing judge's findings of fact were supported by clear and convincing evidence and his resulting conclusions of law were supported by those facts, we conclude that Respondent violated MLRPC 1.8(a) and MLRPC 8.4(a), (b), (c), and (d).[6] Our only remaining task is to determine the appropriate sanction for Respondent's misconduct. During oral argument before this Court, Respondent recommended a reprimand, claiming that he did not act with malice. Bar Counsel recommends disbarment. Bar Counsel contends that, absent mitigating circumstances, which the hearing judge did not find were present in this case, the appropriate sanction for "repeated actions of dishonest, fraudulent, or misleading behavior," such as Respondent's conduct in this case, is disbarment.

In determining the appropriate sanction for an attorney's misconduct, we evaluate the particular facts and circumstances of each case. *See Attorney Grievance Comm'n v. Coppola*, 419 Md. 370, 404 (2011). "The severity of the sanction depends on . . . the intent with which the acts [of misconduct] were committed, the gravity, nature and effect of the violations, and any mitigating factors." *Attorney Grievance Comm'n v. Ward,* 394 Md. 1, 33 (2006). As we consider the appropriate sanction, we bear in mind that the purpose of a sanction is not to punish the attorney, *Attorney Grievance Comm'n v. Garcia*, 410 Md. 507, 521 (2009), but rather, "to protect the public and the public's confidence in the legal profession." *Attorney Grievance Comm'n v. Zimmerman*, 428 Md. 119, 144 (2012).

---

[6] Given our conclusion that Respondent violated MLRPC 1.8(a) and MLRPC 8.4(b), (c), and (d), we conclude that Respondent necessarily violated MLRPC 8.4(a). The hearing judge so concluded and Respondent offered no exception to that conclusion.

"Sanctions accomplish these goals by deterring intolerable conduct and keeping those unfit to practice law from doing so." *Id.*

Respondent has violated numerous Rules of Professional Conduct. We need only refer at this juncture to the conduct that, standing alone, warrants disbarment. "We long have held that repeated acts of dishonest, fraudulent, or misleading behavior may warrant a sanction of disbarment." *Attorney Grievance Comm'n v. Steinberg*, 395 Md. 337, 373 (2006). "Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse." *Garcia*, 410 Md. at 521-22 (quoting *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 418 (2001)). Thus, "[w]hen an attorney's conduct involves intentional dishonesty, fraud, deceit or misrepresentation, we do not discuss 'degrees' of dishonesty, but generally order disbarment, absent compelling extenuating circumstances." *Id*. at 521 (citation omitted).

Here, the gravamen of Respondent's misconduct is his dishonest, deceitful, and fraudulent conduct in connection with, and subsequent to, his obtaining Ms. Popoola's agreement to invest $40,000 in the James Street and Lorraine Avenue properties. Respondent withheld from Ms. Popoola information that would have allowed her to make an informed decision regarding her investment. In addition, he crafted the partnership agreement in such a way as to make it appear that a return on Ms. Popoola's real estate investment was guaranteed, rather than informing her of the numerous risks associated with

such investments. Respondent's pattern of deceit and misrepresentation continued after Ms. Popoola signed the partnership agreement. He failed to allocate any of Ms. Popoola's $20,000 investment in the James Street property toward repairs and improvements, as he was required to do under the agreement. And when Ms. Popoola inquired about the status of her investment in that property, he falsely represented that the renovations were underway and nearly completed. That conduct, taken together, is sufficiently dishonest to warrant disbarment absent compelling mitigating circumstances.

Even when mitigating circumstances exist, the bar for avoiding disbarment remains high. "In order to demonstrate sufficient mitigation to warrant a lesser sanction than disbarment there 'needs to be almost conclusive, and essentially uncontroverted evidence that . . . the attorney had a serious and debilitating mental condition.'" *Attorney Grievance Comm'n v. Kobin*, 432 Md. 565, 586 (2013) (quoting *Vanderlinde*, 364 Md. at 418-19). In addition, "the mental condition must serve as the 'root cause' for the misconduct—meaning, it must affect[] the ability of the attorney in normal day to day activities, such that the attorney was unable to accomplish the least of those activities in a normal fashion." *Id.* (citation and internal quotations omitted). "[T]he mental condition must 'also result in [the] attorney's utter inability to conform his or her conduct in accordance with the law and with the [Rules of Professional Conduct].'" *Attorney Grievance Comm'n v. Palmer*, 417 Md. 185, 212 (2010) (quoting *Vanderlinde*, 364 Md. at 414).

The hearing judge did not find the presence of mitigating circumstances.

-36-

Respondent's only suggested mitigation is that he suffers from "psychiatric conditions" and takes medication that affects his "function and memory." Respondent, however, provided no evidence, much less conclusive evidence, corroborating his mental illness. Even if he had, such evidence would not excuse his misconduct because the record does not support a claim that he was unable to perform "normal day to day activities . . . in a normal fashion" at the times pertinent to this action. *See Kobin*, 432 Md. at 586. In fact, in emails he sent to Ms. Popoola in 2007, Respondent documented how he was performing tasks related to his law practice and his various business ventures. Although he may have been "overwhelmed" by those activities, Respondent did not prove that there existed any circumstances mitigating his misconduct.

All of the above leads us to conclude that disbarment is the appropriate sanction for Respondent's misconduct.

> **IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761(b), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AND AGAINST TAIWO A. AGBAJE.**